**L. K. LYCON, Appellant,**

v.

**Norma Lee WALKER, Appellee.**

**No. 16366.**

United States Court of Appeals
Eighth Circuit.

June 6, 1960.

Roy F. Carter, Kansas City, Mo., for appellant.

Lyman Field, Kansas City, Mo., for appellee.

Before SANBORN, WOODROUGH, and BLACKMUN, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from a twenty-nine thousand dollar judgment for the plaintiff for damages on account of personal injuries she suffered in a collision between a motorcycle on which she was riding as a passenger going in a northerly direction on U. S. Highway 65 at a point about five and a half miles south of Marshall, Saline County, Missouri, and an automobile carrying two persons travelling on the highway at that point in a southerly direction. Elbert Neil Burgard was operating the motorcycle with the plaintiff Norma Lee Walker behind him and he was killed. The defendant, L. K. Lycon, was operating the automobile with his wife beside him and she was killed. There was diversity of citizenship and federal jurisdiction. In her amended complaint, Norma Lee Walker charged defendant Lycon with negligence directly causing the accident in driving on the wrong side of the road into the vehicle on which plaintiff was a passenger, and defendant Lycon specifically denied that he operated on the wrong side of the road and alleged that the plaintiff's damage was contributed to by plaintiff's carelessness in that the operator of the motorcycle on which she was riding as a passenger was operating it on the left side of the center of the highway; failing to operate it as near the right hand side of the highway as practicable, and failing to operate upon his own or proper side when by the exercise of ordinary care on her part she could have protested so that the operator of the motorcycle would have had time to turn to the right hand side of the highway and thereby avoid a collision. Issue was also joined as to charges of excessive speed, failure to keep a proper lookout, and to have the vehicles under control.

The plaintiff and the defendant driver of the colliding automobile were the only surviving witnesses to the accident. The plaintiff testified that the motorcycle on which she was riding "was at all times operated on the north-bound lane of travel." She saw the defendant's automobile "just after it topped the crest of the hill." It was "approximately part on his lane and part on our lane." "Then it just slid into the right hand lane or east lane of traffic [the wrong lane] and then went into a skid and was skidding sideways." It continued "just sliding sideways toward us in our lane of traffic" to such an extent that "it was completely blocking the east lane of the highway and sliding sideways." She said the driver of the motorcycle continued to operate in his proper lane of travel because there wasn't "enough time to have turned either way." He was braking the motorcycle with both the hand and the foot brake. The motorcycle was going between 40 and 45 miles an hour and the defendant's car was being operated at a speed "much faster than we." She located the point of impact in the center of the north bound lane [the motorcycle's lane].

The defendant Lycon testified that he first saw the motorcycle when it was about 300 feet away from him. It was across the center line heading for defendant's side of the road. It kept coming on his [the wrong] side of the pavement. Defendant honked his horn and applied the brakes sliding his wheels. The motorcycle kept coming on his [the wrong] side of the road. Defendant's speed was reduced to about 4 miles an hour. The motorcycle was coming at a speed of 60 to 70 miles an hour and never moved out of defendant's path. Defendant considered turning to the right but felt that would cause the impending collision to be head-on, so when the motorcycle was about 36 feet from him he swung to the left and pushed the accelerator clear to the floor board hoping to jump out of the way to the left. The car did jump forward. When the two vehicles were separated about 15 feet the motorcycle turned back to its right towards the defendant and ran into the side of defendant's automobile. The defendant lost control of his auto-

mobile. It ran over to the left side of the road off the slab, rolling over. On direct examination defendant testified: "[the motorcycle] run right into the side of my car on my side of the road." He did not change or modify that positive testimony. He said on cross-examination that he was just starting to make the turn to the left when the motorcycle struck him which caused his car to "buck and jump."

The automobile left skid marks on the highway which started out parallel with defendant's right edge of the pavement and then veered, curved to the left across the road and up until they veered across the road the skid marks were entirely on the south bound lane. They varied in intensity indicating that one, two, or maybe all four wheels had been skidded sideways after it had started across the pavement. There was no abrupt change in the direction of the skid marks and they did not indicate the point of impact.

The court instructed the jury that it was the contention of the plaintiff that the collision occurred as a result of the negligence of the defendant in operating his motor vehicle upon the left side of the highway and that it was the contention of the defendant that the motorcycle was on its left side of the highway. The court also instructed that the law requires motor vehicles to be operated on the right side of the highway and not on the left side of the highway and "if we do not operate them on the right side of the highway and an accident results then we are guilty of negligence for which we may be held liable."

The defendant requested an "emergency instruction" on the ground that "the testimony indicates and shows that the defendant was at some time during the course of this accident on his left side of the highway but it is defendant's contention that he was there due to the fact of the motorcycle being in front of him which created an emergency and had to go to the left side of the highway."

The Court declined to give the instruction, stating: "The Court believed that in view of the manner in which the case was being submitted, that is, the simple fact that it [the motorcycle] was operated on the wrong side of the street, it was not a question for emergency, and that was the reason for the Court's declining to do that."

On this appeal it is contended for reversal that the Court erred: (1) in refusing to give the "emergency instruction;" (2) in unduly emphasizing the lack of contributory negligence on plaintiff's part; (2b) in its instruction relative to negligence of the motorcycle operator not being imputable to the plaintiff; (3) in admitting the testimony of the doctor witness as to the history of plaintiff's injuries; and (4) in entering judgment on an excessive verdict.

(1) As to the "emergency instruction."

In ruling on defendant's motion for new trial the Court observed that "it was the contention for the defendant that the motorcycle was being operated on the left side of the highway and that he was on the right side of the highway. The Court charged the jury that if the motorcycle was at any time immediately before the accident on the left hand side of the highway and that the collision resulted from the operation of the motorcycle on the left hand side of the highway, then the defendant would not be negligent."

The statement of the Court is in accord with the defendant's pleading and with his evidence. He adduced no evidence that he was confronted with an emergency that caused him to operate his car on the wrong side of the road. His testimony was positive that the motorcycle was so far on the wrong side of the pavement that it lacked only a foot and a half from the edge of the road on that side and that it ran right into the side of his, defendant's car on his side of the road.

There is no question that under Missouri law a motorist confronted with

an emergency caused by another coming towards him on the wrong side of the road may be excused under appropriate circumstances for getting on the left side. But no such case was presented here. Here there was no more reason to submit to the jury that the defendant may have gotten on the wrong side of the road because of emergency than to submit to them that the motorcycle may have gotten on the wrong side because of an emergency. Neither of them presented that situation.

The Missouri Supreme Court was confronted with a substantially similar situation in Cantwell v. Cremins, 347 Mo. 836, 149 S.W.2d 343, 347. There the parties to a collision of motor vehicles each pleaded and adduced evidence that the other was operating on the wrong side of the road. On the appeal the appellant complained that the Court's instructions (which were to the same effect as those given here) excluded from the consideration of the jury any excuse or reason the appellant may have had for being on the wrong side of the road. The Missouri Supreme Court concluded that the instructions were not subject to the criticisms made. It held that the recovery was based on the theory that the party found to be negligent was on the wrong side of the road and that that was the sole cause of the collision. The court said:

> "The sharp and main issue at the trial was whether the driver of the truck (plaintiff) or the driver of the Plymouth (defendant) violated the statute of Illinois (requiring meeting drivers on the highway to pass on the right) above referred to and relied on by both plaintiff and defendant Cremins. The driver of the truck or the driver of the car did not claim any excuse for being on the left side of the road. Each claimed that he was not. The evidence, as viewed from the record, overwhelmingly supported plaintiff's theory. Under the theory of the case as tried the instructions given were proper."

The appellant cites and relies on the following cases to support his contention that the Court erred in refusing to give an "emergency" instruction: Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839; Leek v. Dillard, Mo.App., 304 S.W.2d 60; Kieffer v. Bragdon, Mo.App., 278 S.W.2d 10; Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736; Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541; Washington v. Good, 10 Cir., 260 F.2d 268; Hasselbrink v. Speelman, 6 Cir., 246 F.2d 34; Cherry v. Stedman, 8 Cir., 259 F.2d 774; Jones v. Hughey, Mo.Sup., 283 S.W.2d 550; Huse v. Consolidated Freightways, 7 Cir., 227 F.2d 425; Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S.W.2d 200; Gower v. Trumbo, Mo., 181 S.W.2d 653; Montgomery v. Virginia Stage Lines, 89 U.S. App.D.C. 213, 191 F.2d 770; Chicago & North Western Railway Co. v. Green, 8 Cir., 164 F.2d 55.

A leading Missouri case cited by appellant on the subject of emergency instructions is Lewis v. Zagata, supra, where damages were sought for injuries suffered by a passenger in a taxi-cab which came into collision with a truck. The basis on which recovery was sought was that defendant's cab driver negligently operated on the left hand side of the road at and into an approaching motor car. The cab driver testified that he was not on the left hand side of the road at any time up to the time he pulled to the left to avoid the other car which was moving on the wrong side. There was practically an admission that he was on the wrong side at the time of collision. The appellant obtained reversal of a verdict and judgment for defendant on account of error in instructions, but the instruction (7) which set forth facts which if found would excuse the cab driver being on the wrong side was held not to be erroneous. The Supreme Court justified the "emergency instruction" that was given but made it plain that as the only basis for recovery by plaintiff was defendant's operating on the wrong side and she could not recover if he was not negligent in getting

on the left hand side of the highway. In the context of the case the instruction was held proper.

■ In contrast, in this case, the positive statement of defendant was that the motorcycle was on the wrong side of the road at the time of the collision. He positively swore that he was not, and that the motorcycle ran into him on his side of the road. Under the court's instruction the jury was bound to acquit him if they had believed him. The cited case lends no support to the contention that there was any basis for an emergency instruction to excuse either plaintiff or defendant's being on the wrong side of the road in this case.

The Missouri cases and the federal cases cited for appellant have been examined, and on consideration of them we conclude that the district court did not err in denying appellant's request for an emergency instruction. Its declaration that "it was the contention of the defendant that the motorcycle was being operated on the left side of the highway and that he was on the right side of the highway" is in accord with the record.

(2) Appellant contends that the Court erred in its charge (a) in regard to plaintiff's contributory negligence and in emphasizing plaintiff's alleged lack of contributory negligence and also (b) that the court erred in its charge concerning the negligence of the motorcycle operator not being imputable to plaintiff.

The record shows that at the conclusion of the instructions appellant took the following exception:

"Further, the defendant objects and excepts to the charge of the Court in regard to the question of there being no contributory negligence on the part of the plaintiff on the ground that too much emphasis was placed on this point. The Court charged the jury at length in that regard and in view of the statement of the Court that there is no claim and there has been no argument in regard to any particu-

lar negligence, such as emphasizing of that point we feel is prejudicial to the defendant."

This exception obviously went only to the charge of the Court in regard to "the question of there being no contributory negligence on the part of the plaintiff."

■ (a) Although the defendant pleaded in his answer that any damage suffered by plaintiff was contributed to by plaintiff's negligence, we find no merit in appellant's contention that the Court unduly emphasized that no contributory negligence was shown on plaintiff's part. The law in that respect, declared by the Court, was related briefly and properly to the evidence.

■ (b) Appellant's claim of error seems directed more particularly to what the court said concerning imputing negligence of the motorcycle operator to the plaintiff. Appellant concedes in the brief that under the evidence no negligence of the motorcycle operator was attributed to plaintiff. But the exception taken to the court's charge to the jury was directed only to the charge in regard to the question of contributory negligence on the part of the plaintiff. The exception included no reference to that part of the charge concerning negligence of the motorcycle operator not being imputable to the plaintiff. Appellant has not preserved for review any alleged error in the court's charge in regard to the question of there being no imputable negligence. Nesbit v. Everette, 5 Cir., 243 F.2d 59; Ditter v. Yellow Cab Co., 7 Cir., 221 F.2d 894; Holliday v. Great Atlantic & Pacific Tea Co., 8 Cir., 256 F.2d 297.

■ The defendant pleaded that "any injury * * * suffered by the plaintiff was solely and directly due to the * * * negligence of one Elbert Neil Burgard [the operator of the motorcycle] * * *" and it was incumbent on the Court to clearly explain and submit that defense to the jury. It was in the context of that defense that the Court found it necessary to explain that

if under the law and evidence the jury found Burgard negligent, that negligence was not imputable to plaintiff, but if Burgard's negligence constituted, as defendant claimed, the sole cause of the collision, she could not recover. We find no undue emphasizing of any of the matters included in the charge. We conclude that the instructions were fair, impartial, and in no respect erroneous.

(3) When Dr. Robert Fitzgerald, who had examined plaintiff at her counsel's request, took the witness stand he stated that he had conducted the usual and routine physical examination that he conducted on all persons sent to him to determine the nature and extent of disability. He was asked what the first step was in that procedure and he answered that the first step was to obtain a history as to what had happened. He was then asked, "Would you give the jury the history that you obtained." The Court overruled an objection by defendant and the doctor answered:

"Her history is [that] on October 27, 1956 she was riding a motorcycle that was involved in a collision and that as a result of the impact she sustained a fracture of the facial bones on the right, contusions and lacerations of the face, chest, scalp, and left leg, fractures of both hands, and fractures of the left leg, femur, that is the left thigh bone, and right foot. She stated that she was taken to Fitzgibbons Hospital in Marshall, Missouri, then to Fort Leavenworth Hospital, where the fracture of her left femur was reduced by open reduction and fixation with an intermedullary pin. She had no immobilization for her hands. She stated that she was discharged two months later using crutches which she continued to use for one year, and then canes after that. She has been seen by Dr. Milazzo at Chillicothe, Missouri, who has been treating her for her back which she states started bothering her when she first got up after her surgery. She had had no other medical care or examination."

It is apparent that the doctor did not testify to any facts the plaintiff told him about which would tend to prove the contested issues of fault for the collision. Furthermore, the defendant in his turn presented the testimony of a medical doctor from whom he elicited a substantially similar history. But appellant presents the point here that the Court erred in admitting the testimony over the objection that it was hearsay. Appellant argues the point extensively as an abstraction but has not preserved it for review in accord with Rule 11(b) of this Court, 28 U.S.C.A. The point relates to the admission of evidence and the rule requires the statement of the appellant's brief to quote the evidence, the objection, and the ruling claimed to be prejudicially erroneous. He has refrained from any such quotation and makes no attempt to point out anything in the history that prejudiced him. Counsel for appellee, however, has taken up each detail of the history and demonstrated that nothing substantial or material was contained in it that was not established by competent evidence, or was not of undisputed or uncontested facts, or that could have prejudiced the defendant.

The Supreme Court of Missouri, in ruling upon a similar question in Lesch v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 258 S.W.2d 686, 691, said:

"The objectionable portion of the instant answer did not cover any fact that had not been established theretofore by competent evidence and was of facts not contested or disputed in the case. That the answer embraced hearsay testimony was harmless in the circumstances."

The admission of the testimony objected to comes squarely within the purview of Rule 61, F.R.Civ.P., 28 U.S.C.A., and presents no reversible error.

(4) Appellant contends that the Court erred in entering judgment on an excessive verdict. The verdict was in the amount of $29,000.00. The plaintiff at the time of the trial was a 31 year old woman; there was evidence that her injuries included generally: a compound, comminuted, transverse fracture of the left femur, which was reduced by the insertion of an intermedullary pin, which was still in place at the time of trial; fractures of the facial bones on the right, both hands, and right foot; injury to the left eye; lacerations of the face, chest, scalp, and left leg; she underwent two surgical operations and anticipated another when the intermedullary pin was to be removed; all her teeth were loosened and required braces for a period of time; she had permanent residual limping, characterized as a "gluteal lurch;" a permanent weakness in the left thigh and gluteal muscles, a low back sprain, blurring of vision in the left eye; a permanently stiff left knee; she was hospitalized for 55 days; to the time of trial (two years and seven months) she had not enjoyed a "pain-free day," and had been unable to engage in gainful employment to support herself or her children; for a year she had required the use of crutches to walk, and still used a cane for "rough" walking; her ability to accomplish household duties and partake in her customary recreation was impaired; she was subject to periods of dizziness and lack of balance; her "out of pocket" expenses came to $3,630.00.

"We have consistently held that in a tort action the question of the excessiveness of a verdict is a question to be determined by the trial court on motion for new trial and cannot be considered as ground for reversal." Chicago, Rock Island & Pacific Railroad Company v. Williams, 8 Cir., 245 F.2d 397, 406.

We find no prejudicial error and the judgment appealed from is

Affirmed.