**Roland E. BEDWELL, Respondent,**

v.

**CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, a corporation, Appellant.**

**No. 57292.**

Supreme Court of Missouri, Division No. 1.

April 8, 1974.

Motion for Rehearing or to Transfer to Court en Banc Denied May 13, 1974.

C. Marshall Friedman, Gray, Friedman & Ritter, St. Louis, for (plaintiff) respondent.

Voorhees & Summers, Alphonso H. Voorhees, Saint Louis, for (defendant) appellant.

Laurance M. Hyde, Special Commissioner.

Action for damages under the Federal Employers Liability Act for personal injuries. Plaintiff had verdict and judgment for $94,000. We have jurisdiction because notice of appeal was filed September 2, 1971.

Plaintiff was injured in April 1969 while working as a car inspector for defendant in their Latta yards at Jasonville, Indiana. While plaintiff was inspecting a train and stepped backward his foot was caught in a steel band imbedded in the ground near the track. Plaintiff landed on his tailbone, experienced numbness from the waist down and severe pain. He was unable to complete his work shift and went home. No issue of defendant's liability for negligence is presented on this appeal and defendant's only claim is that the judgment is excessive. Defendant says a substantial remittitur should be ordered.

Plaintiff had the evidence of three doctors, Dr. Schoedinger of St. Louis at the trial, Dr. Buell, plaintiff's home town family doctor, and Dr. Rosene of Terre Haute, by deposition. Dr. Rosene examined plaintiff for defendant. Defendant had Dr. Conrad who testified at the trial. All agree that plaintiff sustained a fracture of the first lumbar vertebra. Plaintiff's evidence also supported a finding of a fracture of the twelfth dorsal vertebra directly above the first lumbar although Dr. Conrad said it was a minor compression. Plaintiff's evidence also showed a ruptured disc there with degenerative arthritis of the spine and nerve injury affecting his legs. Plaintiff's evidence (Dr. Schoedinger) also was that a portion of the disc between the fourth and fifth lumbar vertebrae bulged forward into the spinal canal. There was some corroboration of this in Dr. Rosene's findings. Nerve root injury was indicated by leg raising tests producing pain and by calf atrophy.

Plaintiff's height was five feet eight inches and he weighed 245 pounds. He received from $7,500 to $8,000 per year for his work for the railroad. His age was 41 years at the time of his injury and he had been in railroad employment since his discharge from the armed forces at age of 19 after the end of World War II. Prior to his injury his physical condition was excellent and he thought he could lift a car wheel weighing 750 to 800 pounds. Since his injury plaintiff has not been free from pain and takes eight to ten Darvon and aspirin per day. He cannot drive his wife's small car but can drive a larger car he owns. He tried to use some tools and do some welding but could not. He also tried to mow his yard but could not finish.

After plaintiff notified his foreman of his injury he gave him a slip to see Dr. Rotman (who did not testify) but after having X rays told him the X rays showed a broken vertebra and made a hospital reservation for him. However, plaintiff would not go to the hospital but went back to his family doctor, Dr. Buell, who had more X rays taken. Plaintiff continued under Dr. Buell's care for about six months, wearing a Jewett back brace and taking aspirin and Darvon. Dr. Buell also had plaintiff obtain a firm mattress with a board. Later plaintiff wore a smaller back brace after going without one for some time. Plaintiff's weight made it difficult for him to wear the Jewett brace. Dr. Buell first thought plaintiff would be able to return to work. However, he examined plaintiff every two weeks until June of 1969 and thereafter every three or four weeks until April of 1971. His opinion was that plaintiff would not be able to do gainful work without having a lot of pain.

Dr. Buell wanted plaintiff to see an orthopedic surgeon and got him to see Dr. Rosene at Terre Haute in September 1969. Dr. Rosene had plaintiff go to Indianapolis for an electromyogram in February 1970. In March 1970, plaintiff's attorney had plaintiff come to St. Louis to see Dr. Schoedinger who recommended plaintiff be hospitalized and have a lumbar myelogram but plaintiff refused to do that. In May 1971 Dr. Schoedinger saw plaintiff again and plaintiff had an electromyogram which among other things showed abnormalities in the large muscle in the back of left calf. Dr. Conrad examined plaintiff at the request of defendant's attorney in May 1971. Dr. Conrad said a myelogram was necessary to definitely determine the disc condition. Dr. Schoedinger said procedures of treatment of enzyme injection and a myelogram, which he recommended, involve certain hazards including danger of infection and a danger from anesthesia. His opinion was that plaintiff's condition is permanent but later said that meant permanent without further treatment. He also said plaintiff would not be able to engage in any activity which is going to require excessive bending, pushing, pulling and probably excessive walking. There could be an operation to remove a ruptured disc which required peeling away muscles from the backbone, removal of spinus processes cutting out the disc with a knife. Concerning dan-

ger from such an operation, he said one or two per cent might not survive operations requiring general anesthesia. Plaintiff's wage loss at the time of the trial was more than $16,000.

As noted plaintiff refused to be hospitalized and went to hospitals only for examinations. Plaintiff also refused to have a myelogram but did have an electromyogram. There is some disagreement in the evidence concerning such tests as affecting diagnosis and the risks from taking them. As to the duty of a person claiming damages for personal injuries to risk injuries from operations, see King v. City of St. Louis, 155 S.W.2d 557, 565 (Mo.App. 1941). See also Stipp v. Tsutomi Karasawa, 318 S.W.2d 172 (Mo.1958); Brown v. Kroger Co., 358 S.W.2d 429 (Mo.App. 1962). In this case, we find nothing in the evidence to show that anything plaintiff did or failed to do aggravated his injuries. Moreover, the evidence did not show what further treatment was meant or what other treatment could accomplish.

Defendant cites five cases in support of its claim that the judgment is excessive. Beard v. Railway Express Agency, Inc., 323 S.W.2d 732 (Mo.1959); Breland v. Gulf, Mobile and Ohio R. Co., 325 S.W.2d 9 (Mo. 1959); Harp v. Illinois Central R. Co., 370 S.W.2d 387 (Mo.1963); Johnson v. Missouri-Kansas-Texas R. Co., 374 S.W.2d 1 (Mo.1963); Russell v. Gulf, Mobile and Ohio R. Co., 397 S.W.2d 583 (Mo.1965). Plaintiff says these cases (two 13 years old, one 9 years, one 8 years, and one 6 years) should be considered as authority in support of his judgment in view of the court's present recognition of the increase in cost of living and the decline in the purchasing power of the dollar. Defendant says these are the most recent cases involving injuries in any way similar to plaintiff's injuries. Plaintiff cites Schutt v. Terminal R. Ass'n of St. Louis, 79 Ill.App. 2d 69, 223 N.E.2d 264 (1967), in which a judgment of $125,000 for a 38-year-old switchman was affirmed, where the injury was to a disc between L–5 and S–1 caused by a fall, preventing him from doing work requiring walking, stooping or bending. That plaintiff walked with a cane and had worked as an insurance salesman. Plaintiff also cites Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 409 F.2d 145 (1969), in which the plaintiff had a verdict for $80,000 for a wrist injury requiring his wrist to be fused into an immovable joint, which caused him to develop a stomach ulcer. Remittitur ordered by the trial court was set aside and judgment ordered entered for $80,000. Plaintiff also cites Grunenthal v. Long Island R. Co., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968), in which the United States Supreme Court set aside a remittitur of $105,000 ordered by the court of appeals and directed entry of the judgment of the trial court for $305,000. The injury was a badly crushed foot in which serious infection developed and operations were required.

In Beard (323 S.W.2d l. c. 745) plaintiff, 54 years old, received $350 per month as a carman and had a loss of wages at the time of trial of $10,150. He was struck by a baggage wagon causing the fifth lumbar vertebra to be "slightly forward of its normal seat on the sacrum." It was found: "He will be able to work, but not 'heavy manual labor involving his back' * * * such as does the manual labor of lifting, bending and stooping in performing the duties of a carman." A verdict of $60,000 was reduced to $48,000 by remittitur in the trial court and to $38,000 by remittitur on appeal.

In Breland (325 S.W.2d l. c. 15) plaintiff, 48 years old, received less than $5,000 per year as a fireman. In a derailment his head and back were injured. He had a breaking of the transverse process of the fifth lumbar vertebra and muscle and nerve injuries which made him unable to return to his occupation as a fireman. A verdict of $75,000 was not reduced by the trial court but on appeal a remittitur of $25,000 was required. One judge dissented on the ground that the remittitur should be only $15,000. The judgment was affirmed for $50,000.

In Harp (370 S.W.2d l. c. 397) plaintiff, 44 years old, a locomotive engineer "was thrown and bounced around in the cab" when his engine was struck from the rear by freight cars. His injury was a ruptured disc in the cervical area at the level of C–5–6 which would require a painful operation. The evidence was that plaintiff could not perform the work of a locomotive engineer but was "by no means totally incapacitated." Disc injury cases were reviewed showing verdicts affirmed from $37,500 to $45,000. Plaintiff's judgment of $86,000 was reduced to $50,000 by requiring a remittitur of $36,000.

In Johnson (374 S.W.2d l. c. 5) plaintiff, 43 years old, a railroad maintenance worker was injured carrying a 300-pound tie with another section man. His testimony was that his body was suddenly and violently twisted. There was evidence of a ruptured intervertebral disc or "a displacement of the vertebrae so that they are not in line." The trial court required a $10,000 remittitur from a $70,000 verdict. This court saying it had not been conclusively demonstrated that there was a ruptured disc required a further remittitur of $15,000, affirming judgment for $45,000.

In Russell (397 S.W.2d l. c. 589) plaintiff 61 years old oiled trains and claimed injury from a violent jerk caused by coupling to a car under which Russell was working. Russell had no broken bones or other visible signs of injury. This court found that Russell sustained soft tissue or muscle injuries to his back on either side of the lumbar vertebrae. The verdict was for $45,000 and this court required a remittitur of $20,000 affirming the judgment for $25,000.

The plaintiff's evidence in Johnson and Russell did not show injuries comparable to those shown by plaintiff's evidence in this case. In neither was there proof of a fractured vertebra or of a ruptured disc although that was claimed in Johnson. Likewise in Beard, the injury was not a fracture but a displacement. In Breland there was a fracture of a transverse process and in Harp a ruptured disc. Here plaintiff had evidence from which the jury could find fractures of two vertebrae and a ruptured disc. Thus his evidence shows greater injuries than those in any of the cases on which defendant relies.

This court in considering claims of excessive verdicts has noted the constantly eroding purchasing power of the dollar and in Zipp v. Gasen's Drug Stores, Inc., 449 S.W.2d 612, 623 (Mo.1970), said this had amounted to 20% between 1965 and 1970. The Kansas City Court of Appeals in Shaffer v. Kansas City Transit, Inc., 463 S.W.2d 606, 610 (1971), estimated the decline between the 1957–1959 period and 1971 as in excess of 30%. We, of course, know there has been a further decline since 1971. See also Helming v. Dulle, 441 S.W.2d 350, 354 (Mo.1969), and McWilliams v. Wright, 460 S.W.2d 699, 707 (Mo.1970). The amount of damages is primarily for the jury and here it had the approval of the trial judge.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.