Carolyn BEST and Stephen Best, Plaintiffs-Respondents,

v.

FRED WEBER CONSTRUCTION CO., et al., Defendants-Appellants.

No. 35938.

Missouri Court of Appeals, St. Louis District, Division Two.

May 20, 1975.

Motion for Rehearing or Transfer Denied June 26, 1975.

Paul E. Fitzsimmons, Fitzsimmons & Fitzsimmons, Attorneys, Inc., Clayton, for defendants-appellants.

William J. Raack, Hearnes, Padberg, Raack, McSweeney & Slater, St. Louis, for plaintiffs-respondents.

KELLY, Judge.

This appeal from the Circuit Court of the City of St. Louis, Missouri, from a judgment of that Court awarding the plaintiffs, husband and wife, damages for injuries sustained by the wife, Carolyn Best, and loss of consortium and medical expenses incurred on the part of the husband, Stephen

Best, presents for review in this court the following Points:

1. excessiveness of verdict indicating bias and prejudice on the part of the jury;

2. trial court erred in not reducing original verdict of $50,000.00 for Mrs. Best and $20,000.00 for Mr. Best below the judgment from which this appeal was taken after reduction by $20,000.00 and $8,000.00 respectively, or a total of $42,000.00;

3. error in overruling defendant's objection to plaintiff's closing argument which was designed to arouse bias and prejudice against the defendant; and

4. precluding evidence to show precautions defendant took to make the exit ramp safe.

Defendant does not question the sufficiency of the evidence.

The facts of the case are:

Shortly after midnight on Saturday, October 18, 1969, plaintiff-respondents, Carolyn and Stephen Best, were riding in a car driven by defendant, Ted Gilmor. Defendant Gilmor was traveling west on U. S. Highway 44 when he took the westbound exit ramp at Eureka, Missouri. He did not see a sharp curve at the top of the ramp in time to sufficiently slow down and the car traveled down an embankment striking another car at the bottom of the hill. Neither defendant, Gilmor nor any of the other passengers noticed any warning signs indicating a right turn, although flashing red lights were observed ahead and to the right of the vehicle. In addition, several other witnesses testified that no warning signs were posted along the ramp.

Both the plaintiffs left the scene of the accident in an ambulance and were taken to Rockwood Hospital. Stephen Best was treated and released. Suffering from a spi-ral fracture of the left femur, Carolyn Best was placed in traction for 9 or 10 days. Thereafter, an operation was performed where the femur was placed back into alignment by the use of metal plates screwed into the bone. She remained in the hospital for approximately another week.

Mrs. Best had suffered as a child from poliomyelitis which had affected both legs. However, she was able to walk by herself with the use of lateral long leg braces and canadian crutches. After her release from the hospital she was required to use a wheel chair for approximately 6 months during which time she could do very few household chores. Up to the time of trial Mrs. Best still used the wheelchair sometimes in the evening when she was tired. In addition, she has continually experienced leg and back pain. Two orthopedic surgeons testified that she had made a good recovery, but a tendency for her lower limb to roll out and the pain that she experienced were permanent conditions.

Stephen Best testified that he incurred medical, wheel chair and housekeeping expenses in the amount of $4,402.65.

The jury returned a verdict on Count I in favor of plaintiff, Carolyn Best, in the amount of $50,000.00 and on Count II in favor of plaintiff, Stephen Best, in the amount of $20,000.00. Both counts were against defendant Fred Weber Construction Company but in favor of the co-defendant, Ted Gilmor.

Subsequently, defendant Fred Weber Construction Company filed a motion for a new trial. The trial court stated that if, within 10 days, Carolyn Best would remit the sum of $20,000.00 and Stephen Best would remit the sum of $8,000.00, defendant's motion for a new trial would be overruled. Otherwise, the motion would be sustained on the ground that the verdict was excessive. Thereafter, the plaintiffs did remit such amounts and the motion for a new trial was overruled. On November 15,

1973, defendant Fred Weber Construction Company filed its Notice of Appeal with this Court.

■ Defendant's first point is, we conclude, without merit. Size of verdict alone, and the fact that it might be excessive (as the trial court found here), does not of itself establish that the verdict was the result of bias, passion or prejudice without the showing of some error committed at the trial. Boehm v. St. Louis Public Service Co., 368 S.W.2d 361, 369[9] (Mo.1963). Only the trial court may infer prejudice and bias from the mere size of the verdict, Jones v. Penn Ry. Co., 353 Mo. 163, 182 S.W.2d 157, 159 (1944), and this because of its better opportunity to measure the general effect of the trial proceedings on the jury. Appellate courts, on the other hand, although empowered to correct the excessiveness of a verdict in a proper case by remittitur, may not infer prejudice from the mere size of the verdict alone. Jones v. Penn Ry. Co., supra. Here, the trial court considered the size of the verdict, determined it to be excessive although not the result of bias and prejudice on the part of the jury, and ordered a remittitur. Unless there was some error committed at the trial we must affirm.

■ Defendant's second point, like its first, is likewise without merit. If the evidence, viewed in the light most favorable to the ruling of the trial court, affords reasonable and substantial support for the ruling, then it must be affirmed. Morris v. Israel Brothers, Inc., 510 S.W.2d 437, 447[13] (Mo. 1974). The trial court here has actually considered the matter of excessiveness of the jury verdict and, by ordering remittitur, has given an affirmative expression of its own considered view as to what the size of the verdict should be, and the appellate court, while not bound thereby, nevertheless accords the trial court's ruling very great weight, and regards it so strongly persuasive that except in a case which unmistakably calls for a greater reduction, the judgment of the trial court will not be disturbed on appeal. Morris v. Israel Brothers, Inc., supra.

■ In resolving the question whether a further reduction is required, in the verdict awarded Mrs. Best, this court must consider the nature and extent of the injuries and losses, plaintiff's age and diminished earning capacity, if any, the changing economic factors, and the amount awarded and approved in cases of similar or of fairly similar comparable injuries. Helming v. Dulle, 441 S.W.2d 350, 354 (Mo.1969). Carolyn Best, plaintiff-wife, was 28 years of age at the time of the accident. She sustained a spiral fracture of her left thigh. Her hospital stay lasted two and one-half weeks, nine or ten days of which she spent in traction. She underwent surgery whereby metal plates were screwed to the bone of the femur. She was confined to a wheel chair for approximately six months. At the time of trial she was still experiencing pain—a throbbing—in her left leg and in her back, and there was an external rotation attitude of her left lower limb which will be permanent. She tires more easily and occasionally uses her wheel chair.

Although we find no case directly in point, we have a few cases which lend us some guidance in deciding the size of this verdict and its excessiveness. In Lycon v. Walker, 279 F.2d 478 (8th Cir. 1960) an award of $29,000.00 to a 30 year old woman for injuries to her left femur was held not to be excessive where her expenses totalled $3,630.00. An award to a 46 year old woman of $30,000.00 for fracture of the neck of the femur in DeMariano v. St. Louis Public Service Co., 340 S.W.2d 735 (Mo.1960) was held not to be "grossly or shockingly excessive."

Other than loss of his wife's services and the additional burdens he was thereby caused to have, Stephen Best incurred out-of-pocket expenses of $4,402.65.

■ With respect to Mr. Best's claim we have found the following awards approved:

| Award | Expenses Incurred | |
|---|---|---|
| $13,500.00 | $2,250.00 | Gooch v. Avsco, Incorporated, 340 S.W.2d 665 (Mo.1960) |
| 15,000.00 | 4,300.00 | Massey v. Berlo Vending Co., 329 S.W.2d 772 (Mo.1959) |

Considering that the erosion of the purchasing power of the dollar amounted to 20% between 1965 and 1970, and the knowledge of a further decline since then, we cannot find these judgments excessive. Bedwell v. Chicago, Milwaukee, St. Paul and Pacific R. R. Co., 509 S.W.2d 81 (Mo.1974).

Defendant has failed to show that the jury was motivated by bias or prejudice and we therefore affirm the trial court on this point.

Defendant's third Point is directed to the plaintiff's counsel arguing to the jury that while laws can be passed it doesn't mean anything unless juries enforce them, ". . . And don't kid yourself that Fred Weber Construction Company and other contractors are not going to be aware of what this jury does with reference to . . ." At this point defendant's counsel interposed an objection on the grounds that the statement was beyond the scope of proper argument. This objection was overruled and plaintiff's counsel continued: "Don't kid yourself that they are not going to be aware of what your verdict is and what it is going to mean to other road contractors. You have to determine if the laws on the books are going to gather dust or whether they are going to be enforced. That is why we are here."

■ A trial court has wide discretion in the field of argument and in the absence of clear abuse of its discretion an appellate court is reluctant to find error. Norfolk v. Western Ry. Co. v. Greening, 458 S.W.2d 268, 273[9] (Mo.1970). Defendant argues that this argument of plaintiffs' counsel amounted to telling the jury that its verdict would teach the defendant and other contractors a lesson. It cites no authority for this position and our research has brought none to light so holding. We believe this line of argument might also be viewed as a statement that by its verdict the jury will make clear what it, as a group of disinterested citizens of the community, views as a failure to exercise the reasonable degree of care necessary in the construction of highway ramps and the marking of same to warn those legally progressing over and upon the ramps of any dangerous conditions existing thereon. We conclude that under the facts of this case the trial court did not abuse its discretion and rule that this Point is without merit.

■ Defendant's fourth, and final Point, is that the trial court erred in excluding from evidence that defendant constructed the ramp in compliance with the Missouri Highway Department specifications and that the Missouri Highway Department Engineer supervised all work, including the number and location of warning devices on the ramp, and ordered defendant to open the ramp before the subcontractors installed guardrails and permanent signs.[1]

The cause was submitted to the jury on whether the defendant had negligently failed to give an adequate warning of the dangerous condition of the ramp. The evidence excluded was directed to construction of the highway ramp in accordance with the plans and specifications of the Missouri State Highway Department. The trial

1. The statement of this Point does not comply with the requirements of Rule 84.04(d), V.A.M.R., in that although it states briefly and concisely the action and ruling of the trial court claimed to be erroneous, it fails to state why it is claimed to be erroneous. A reading of the argument portion of defendant's brief on this Point reveals that what defendant's real complaint is, is that it was thereby precluded from setting up the defense more fully discussed in the opinion proper.

**108**

court made it clear that it was going to exclude any testimony whereby defendant would attempt to delegate blame to any third party—here the Missouri State Highway Department.

■ The primary duty to exercise reasonable care for the safety of the general public using a road or highway during improvements or repair rests on the road contractor, and the road contractor in this respect must act reasonably and with due regard to the rights of persons lawfully using the way and is liable for injuries resulting from negligence in the performance of his work. Joshmer v. Fred Weber Contractors, 294 S.W.2d 576, 582[2] (Mo. App.1956).

■ The liability, aforesaid, is imposed upon the road contractor not by virtue of his contract with a public authority, or upon failure to perform the work in accord with a contract, but upon the tortious breach of duty imposed upon the contractor by the common law. Joshmer v. Fred Weber Contractors, supra, l. c. 583[3]. The road contractor's liability exists regardless of the requirements of its contract with the public authorities and irrespective of any liability on the part of the governmental authority employing the contractor. Thus, a road contractor contracting with a public body is not entitled to avail itself of the immunity of the latter from liability for injuries resulting from either wilful tort or negligence in the performance of its public work. Phegley v. Porter-DeWitt Construction Company, 501 S.W.2d 859, 863[1] (Mo. App.1973).

■ The evidence excluded here was not with respect to defendant's efforts to make the ramp safe. What was excluded was evidence which defendant hoped would shift from its shoulders to the Missouri State Highway Department a non-delegable duty on the theory that so long as it constructed the ramp in accord with the plans and specifications of the Department,

placed warning signs where directed by the plans and specifications and the Highway Engineer, it had thereby met its duty to exercise reasonable care for the safety of the general public using the highway ramp. We find that the trial court did not err in excluding this evidence.

Having disposed of each of defendant's Points and finding no trial court error, we affirm.

The judgment of the trial court is affirmed.

SMITH, C. J., concurs and files separate concurring opinion.

STEWART, J., concurs in both opinions.

SMITH, Chief Judge (concurring).

I concur fully in the opinion of the court, but include this concurring opinion to point out what I consider a serious injustice in Missouri's remittitur practice as it now exists and which this case exemplifies.

Plaintiffs received a substantial verdict from the jury. The trial court, in the exercise of its discretion, reduced that verdict through remittitur by a total of $28,000 based upon defendant's contention of excessiveness in its motion for new trial. Plaintiffs were then confronted with accepting that remittitur or undergoing the delay, uncertainty, and strain of another trial. As usually occurs, they accepted the remittitur. Defendant then appealed, raising in this court as its predominant theme the renewed contention of excessiveness. Plaintiffs having accepted the remittitur were unable to appeal the trial court's decision on excessiveness, nor are we asked to determine whether that decision was correctly made. In short, defendant has the benefit of the remittitur, an opportunity to reduce the judgment even more, delay in payment of the judgment, and no risks or adverse consequences from taking an appeal. Plaintiffs, on the other hand, have gained little or nothing from accepting the remittitur,

which acceptance may well have been based upon a desire to receive the judgment expeditiously.

 I entertain serious doubt that the remittitur entered by the trial court was warranted, at least in part and possibly in toto. If we are going to continue to permit appellate courts to entertain requests for additional remittitur then we should place the gamble for such appeals equally on the parties. Where a defendant has sought and received a remittitur from the trial court, which has been accepted by the plaintiff, such acceptance should not preclude an appellate court from examining the propriety of the remittitur where the defendant thereafter appeals. When the defendant elects to place before this court the amount of the damages by asking for additional remittitur, we should not be limited to deciding whether the action of the trial court was inadequate but should decide also whether it was excessive. Whether under the present law and rules we could so decide I do not reach for no request for such decision has been made.