**Bonnie SWINDELL, Plaintiff-Appellant,**

**v.**

**J. A. TOBIN CONSTRUCTION COMPANY, Clarkson Construction Company, and Safe-T-Flare, Defendants-Respondents.**

**No. WD 30207.**

Missouri Court of Appeals, Western District.

Dec. 1, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 22, 1981.

Application to Transfer Denied Feb. 16, 1982.

Don B. Roberson and Robert G. Sachse of Shughart, Thomson & Kilroy, Kansas City, for plaintiff-appellant.

Gene C. Morris and Pieter A. Brower of Field, Gentry, Benjamin & Robertson, Kansas City, for defendants-respondents, J. A. Tobin Const. Co. and Clarkson Const. Co.

Robert M. Kroenert, and John W. Cowden of Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for defendant-respondent Safe-T-Flare.

Before SOMERVILLE, C. J., Presiding, SWOFFORD, Senior Judge, and SHANGLER, CLARK, PRITCHARD, MANFORD and TURNAGE, JJ.

BEN W. SWOFFORD, Senior Judge.

This is an appeal by the plaintiff below from an adverse verdict and judgment in favor of three corporate defendants in a personal injury action. The plaintiff-appellant will be referred to herein as "plaintiff" and the defendants as "defendants Tobin and Clarkson" and "defendant Safe-T-Flare". The points on appeal involve the propriety of a converse instruction of defendants Tobin and Clarkson and asserted error in the rulings of the trial court as to the admissibility of certain evidence proffered by the plaintiff. The trial court overruled plaintiff's after trial motions, judgment was entered against her and this appeal followed.

All defendants argue that any alleged error charged here either as to instructions or admission or exclusion of evidence are immaterial and non-prejudicial since the plaintiff failed to make a submissible case of negligence against any of the defendants.

At the outset, therefore, it is necessary to view the basic and well-established rules which prescribe the scope of this court's review in a case of this kind and

where such a contention is raised by the respondents, because, of course, if under such rules and principles the plaintiff made no submissible case the trial court erred in not directing a verdict for defendants and the matter ends there. In such circumstance, in determining whether a submissible case was made, the evidence must be considered in the light most favorable to the plaintiff and she must be given the benefit of all favorable inference which may be reasonably drawn from the evidence and all evidence will be accepted as true which is not entirely unreasonable or contrary to physical facts or natural laws. *Epple v. Western Auto Supply Co.*, 548 S.W.2d 535, 537, 538[1] (Mo.banc 1977), supplemented 557 S.W.2d 253; *Green v. Crunden Martin Mfg. Co.*, 575 S.W.2d 930, 932[1] (Mo. App.1978).

The record on this appeal is voluminous, consisting of 1050 pages and 86 exhibits. However, for the purpose of ruling this contention of the defendants upon the application of the principles as stated in *Epple* and *Green, supra* the facts pertinent to their argument and to the points raised by appellant on this appeal may be thus summarized:

Prior to April 21, 1974, the J. A. Tobin Construction Company and Clarkson Construction Company, separate corporations, entered into a joint venture contract with the Missouri Highway Department for the construction, grading and widening of the roadway of Interstate Highway No. 29 which contract included a stretch of I–29 near Route AA in Platte County, Missouri. Under the terms of this contract the joint venturers became responsible for handling traffic, barriers, barricades, signs, flagmen, and warnings necessary to protect members of the traveling public using the highway during the construction project.

Under a separate agreement defendants Tobin-Clarkson entered into an agreement with defendant Safe-T-Flare to supply the markers, signs, etc. necessary to accomplish this result on the project, including four-legged sawhorse type warning signs carrying electric blinkers commonly known as "No. 2 signs". These signs were used, among other purposes, to place along the edge between the traveled portion of a construction project and that portion not usable because of a drop-off or other danger, to warn oncoming traffic of that dangerous condition. There was substantial evidence that the defendants Clarkson-Tobin, subject to inspection by a highway department project observer, determined the placement and number of such signs in use of the project. While there was some conflict (or at least confusion), there was evidence that defendant Safe-T-Flare's obligation with reference to the No. 2 signs was to periodically inspect the signs and keep them in repair or replace damaged signs. This defendant periodically inspected the signs on the project site and, by reasonable inference, removed or caused the project contractors to remove conditions of obvious danger to the traveling public referable to the signs.

The record discloses that in certain weather conditions or when a large motor vehicle such as a bus or a freight hauling truck passed such a No. 2 sign the rush of air sometimes blew them over. Under such conditions they were sometimes anchored by sandbags tied to the horizontal crosspiece to add weight.

A Mr. Box testified in behalf of plaintiff. He was the principal partner in the firm of Paul C. Box and Associates, traffic engineers and consultants in the field of design, planning, operation of streets and highways in terms of efficiency of traffic flow, safety of the public, improvement and accident reconstruction.

He and his firm had done such traffic engineering work for many cities, counties and states (including many in Missouri) and for the federal government. His academic and professional qualifications as an expert were impressive and were not and are not challenged.

He was familiar with the No. 2 type sawhorse warning signs. Their purpose was to warn traffic past and around obstructions or other dangers existing from highway construction. Their design con-

templates that any impacting force would drive a No. 2 sign forward and downward and underneath the impacting vehicle to prevent the sign from being thrown sideways or into the vehicle impacting so that it would not become a dangerous projectile. Box stated that if such signs needed added weight due to weather or traffic conditions this would be done by tying sandbags to the sign. The placing of loose rocks on top of a No. 2 sign is not good practice nor is it safe since an impacting vehicle will underride the rock and it will likely become a projectile into the windshield of the vehicle.

Box testified that he was familiar with the site of this accident and that, in his opinion, No. 2 signs should be inspected there once a day since the location was heavily traveled. The accident happened on a Sunday and the evidence showed that Clarkson's job superintendent and its safety director were last on the job site on Saturday and Safe-T-Flare's employee was last on the site on Friday.

On Sunday, April 21, 1974, at approximately 12:15 p. m. one Stephen Ballard was driving his 1965 Rambler automobile in a generally northerly direction on Interstate No. 29 along the construction site as described .2 of a mile north of AA overpass. Riding as a passenger in his car in the right front passenger seat was the plaintiff, Bonnie Swindell, at the time of the trial 23 years of age. She and Ballard had been to church and were headed to the farm of Ballard's parents to go horseback riding. Ballard testified that he was familiar with this road and the construction work in progress since he drove it at least twice a day going to and from his employment.

He testified that as he was proceeding on the traveled portion of I–29 at 40 miles per hour (the posted speed) he lost steering control of his car; his car abruptly swerved to the right; his right wheels went off the traveled highway into the drop-off where the widening construction was in progress; his car struck two or three of the No. 2 warning signs; swerved back onto the traveled highway; and, came to rest several hundred feet north. He stated that the steering balljoint on his car was broken in two after the accident.

Ballard stated that during his daily use of I–29 during this construction he had frequently observed rocks placed on top of the No. 2 warning signs along the traveled portion of the highway and that on the occasion in question just before he hit the first barricade he observed a large rock on top of that sign. He stated that the impact propelled the rock through the right front windshield of his car and that it was later found on the rear floorboard of his car. Photographic exhibits of the car disclosed a large hole in the windshield of the Ballard car and photos of the rock found inside the car were offered and received in evidence. There was testimony that it weighed approximately 40–50 pounds.

Ballard testified that after the impact the plaintiff slumped over onto his lap, was unconscious, was bleeding profusely from the head and he and the plaintiff were thereafter taken by ambulance to the hospital. Ballard noticed the plaintiff's face appeared to be "smashed".

Plaintiff did receive substantial injuries including loss of vision in her left eye; brain damage, multiple facial fractures to her nose, left eye socket, teeth and upper and lower jaws and a subdural injury to her brain. There was no substantial dispute as to the nature and extent of her trauma and resulting injuries, only the residual or permanent results were in any way contested. She testified she had no recollection of any events on the Sunday in question having first regained any consciousness in the hospital several days later. Apparently she suffered from retrograde amnesia, and was unable to add any testimony nor did she have any recollection of the facts of the accident.

Michael Murphy who lived in the area and used I–29 daily to go to and from his home to his employment at the Federal Reserve Bank in Kansas City testified that he had upon a number of occasions seen rocks which had been placed on top of the sawhorse type warning signs along the construction area. The evidence offered by the

defendants was to the effect that rocks were never placed on top the No. 2 signs.

As a preliminary consideration the argument contained in all defendants' briefs as Point III must be addressed. The defendants assert that the alleged error in converse Instruction No. 3 submitted by defendants Tobin-Clarkson, or in the trial court's rulings on the admission of evidence was immaterial and harmless because the plaintiff failed to make a submissible case. The argument is, in substance, that plaintiff failed in this regard because she did not sustain her burden of proving a duty, breach thereof and resultant proximate causation of her injuries. It is urged that, when viewed in the light of foreseeability and probability, the plaintiff's case fails and a directed verdict for the defendants should have been granted.

■ No feasible argument as to the existence of a duty, both under the terms of the Tobin-Clarkson contract with the Missouri Highway Department and the principle that highway contractors have a continuing and non-delegable duty to exercise reasonable care for the safety of the public using the highway, is tenable. *Best v. Fred Weber Construction Co.*, 525 S.W.2d 102, 108 (Mo.App.1975). This obligation logically carries with it a concomitant duty to use ordinary care to avoid creating a dangerous condition near a traveled thoroughfare. M.A.I. 22.02. If the defendants placed a rock on top of the No. 2 sawhorse warning sign and to do so constituted a hazardous and dangerous condition, as testified by expert witness Paul Box, the plaintiff's evidence established both the duty and a breach thereof.

■ The test of what was the proximate cause of the injury is whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant, not whether a reasonable person could have foreseen the particular injury. *Green v. Kahn*, 391 S.W.2d 269, 277[10] (Mo.1965); *Foley v. Hudson*, 432 S.W.2d 205, 207[2] (Mo.1968). An efficient, intervening cause has been consistently recognized as a new and independent force which so interrupts the chain of events as to become the responsible, direct, proximate and immediate cause of injury, and may not consist of an act of concurring or contributory negligence. *Seely v. Hutchison*, 315 S.W.2d 821, 826[6] (Mo.1958). Proximate cause and intervening, efficient cause issues are for the jury when contradictory factual evidence is presented as to negligence and causation, and the facts presented are of such a nature and are so connected and related to each other, that the conclusion that the negligence charged was the proximate cause of the injury may be fairly inferred. *Morris v. Isreal Brothers, Inc.*, 510 S.W.2d 437, 442–443[4, 5] (Mo.1974).

■ The evidence, viewed favorably to the plaintiff, reveals and a jury could find that a large rock was on top of the sign struck by Ballard's car; the impact hurled the rock through the windshield and struck the plaintiff in the face and head severely injuring her; that by contract and law the defendants Tobin-Clarkson were responsible to furnish barriers, signs and barricades to protect the safety and the property of persons using the highway; that defendant Safe-T-Flare by contract with Tobin-Clarkson furnished and maintained this equipment; that Ballard, due to mechanical failure of his car left the traveled portion of the highway, the right side of his car passed down the 12-inch drop-off onto the excavation for the construction and struck the sign which had been weighted with the rock.

The evidence further justified findings that these rocks were placed on top of the signs at this site prior to the accident (a fact in dispute) and this practice was unsafe as it defeated a purpose of the sign design, namely, to collapse forward at ground level to minimize danger and injury to impacting vehicles and persons in case of collision and that, in such event, a loose rock placed on top of the sign by the force of basic physics would likely be projected into the impacting vehicle; that the proper, safer method of weighting these warning signs was to use sandbags suspended from the horizontal crossbars and secured by ropes or wire;

that the site of the construction was one of heavy traffic volume requiring daily inspection; and that Clarkson's safety director and Safe-T-Flare's employees were last on the site two days before the accident and Clarkson's superintendent the day before.

The court is not unmindful of the fact that much of the above-summarized evidence was disputed and contrary evidence was offered, such as the evidence of the defendants that rocks were never placed on top of the No. 2 signs to weight them. However, the conclusion is reached that the evidence presented a submissible case under proper instructions and the court did not err in denying the defendants' motions for directed verdicts.

The plaintiff-appellant vigorously attacks the propriety of the defendants' Tobin-Clarkson's converse Instruction No. 3 and charges the trial court with error in giving that instruction under the facts of this case. The argument is based primarily upon the contentions that said converse instruction violated the requirement that the converse be in substantially the same language as the plaintiff's verdict directing Instruction No. 2 and further that this converse No. 3 improperly and erroneously advised the jury and required them to find that *both* Tobin and Clarkson failed to use ordinary care as a condition precedent to recovery by the plaintiff against *either* defendant.

■ Before any discussion of this point or analysis of the instructions it is well to keep in mind that it was undisputed that on the construction work on I–29 involved in this case Tobin and Clarkson were acting as joint venturers. As such, their liability as to third parties for negligence was joint and several. See *Atkinson v. Herington Cattle Company*, 436 P.2d 816, 200 Kan. 298; *Cherokee Village v. Henderson*, 538 S.W.2d 169 (Tex.Civil App.). Their liability as to third persons is governed by the principles of partnership and agency law. See: 48 C.J.S., Joint Adventure, Sec. 14(a), pp. 866, et seq.

The plaintiff's verdict director as against defendants Tobin and Clarkson was as follows:

## INSTRUCTION NO. TWO

Your verdict must be for Plaintiff and against Defendant Clarkson Construction Company and Defendant J. A. Tobin Construction Company, if you believe:

First, *either Defendant* allowed a No. 2 barricade to be weighted with a rock on top adjacent to the traveled portion of the highway and as a result, the No. 2 barricade was not reasonably safe to the public, and

Second, *either Defendant* failed to use ordinary care to remove such unsafe conditions, and

Third, such failure directly caused or directly contributed to cause damage to Plaintiff.

(Emphasis added)

■ This verdict director properly declares the law in Missouri that joint venturers are jointly liable for personal injuries sustained by third parties, even though the actual negligent act or acts of commission or omission (and therefore the actionable negligence) is that of some but not all of the members of the joint venture. *Pigg v. Bridges*, 352 S.W.2d 28, 33[7] (Mo. banc 1961). It should here be noted that Clarkson had the work force, superintendent and safety director on the project and although Tobin was a joint venturer on the job its people or officials were rarely even on the job site and their regular employees were not doing the work.

■ The Tobin-Clarkson converse instruction reads as follows:

## INSTRUCTION NO. THREE

Your verdict must be for Defendants Tobin *and* Clarkson unless you believe Defendants Tobin and Clarkson failed to use ordinary care as submitted in Instruction No. 2 and that Plaintiff sustained damages as a direct result thereof. (Emphasis added.)

This converse instruction is necessarily confusing when considered in the light of the proper verdict director (No. 2) above

quoted. Further, because of the relationship of Tobin-Clarkson as joint venturers it improperly and erroneously declares the law under this record. This is true and obvious since it was not necessary for the jury to find that *both* Tobin and Clarkson "failed to use ordinary care" in order to find both liable to the plaintiff. The negligence of *either* rendered *both* liable by reason of their legal relationship. Thus, Instruction No. 3 constituted a violent misdirection to the jury and its effect was misleading and confusing and was necessarily prejudicial to the plaintiff and it was reversible error to give that instruction.

The parties' briefs do not cite nor has independent research disclosed any Missouri authority directly in point. Close and persuasive analogies may be drawn, however, with those cases where co-parties' rights stem from different theories of liability or elements of damage.

The cases of *Long v. REA Express Co.*, 573 S.W.2d 62, 67[7, 8] (Mo.App.1978), and *Mayberry v. Clarkson Construction Co.*, 482 S.W.2d 721, 724–26[5, 6] (Mo.1972), held converse instructions that were confusing, misleading, and erroneous to be reversible error. In the *Mayberry* case, plaintiff's husband and wife each sued both for personal injuries and for loss of consortium with the other spouse. The converse required a verdict for defendant unless the jury believed each proposition submitted in three separate verdict directors. Because this converse placed the three verdict directors in one category when in fact each represented a separate claim, this told the jury that either the plaintiff were to recover on all three, or on none. The *Long* case similarly involved plaintiffs husband and wife bringing suit for personal injuries and loss of consortium, except that two defendants were named. In their converse, defendants altered the words "plaintiff" and "defendant" to plural form. This, in effect, required a finding that both plaintiffs sustained damages as a condition precedent to recovery against defendants by either (l.c. 67), which was held to be misdirection and reversible error. The converse should allow the jury to find for plaintiff on each theory

submitted, and should not deprive the plaintiff of any possible theory of recovery. See *Royal Indemnity Co. v. Schneider*, 485 S.W.2d 452, 457–58[2] (Mo.App.1972).

*Davis v. St. Louis Southwestern Railroad Co.*, 444 S.W.2d 485, 489[4] (Mo.1969) is another case wherein remand for new trial was had because a converse erroneously limited plaintiff's theory of recovery. In *Davis*, a personal injury action was brought under FELA against an employer based on the negligence of either the defendant-employer in failing to provide reasonably safe work methods, or another employee's negligence in dropping a brake beam on a hammer handle. The converse submitted by defendant required a verdict for defendant if the jury did not believe defendant was negligent. Because this improperly deprived the plaintiff's theory of recovery against the employer for the negligence of plaintiff's co-employee, the converse was held to be error.

Under the principle of these foregoing cases, it was reversible error for Instruction No. 3 to require that both defendants Tobin and Clarkson failed to use ordinary care in order to return a verdict for plaintiff, because a finding that either defendant was negligent would support a verdict against both.

It is concluded that the giving of Instruction No. 3 constituted reversible error under this record.

■ As to the defendant Safe-T-Flare a different situation is presented. The plaintiff submitted a separate verdict director (No. 4) as to Safe-T-Flare and it offered a separate converse instruction (No. 5). It was entirely proper that this be done in this case for a number of reasons. Safe-T-Flare's position in this case is that of working under contract, not with the Missouri Highway Department, but with defendants Tobin-Clarkson. Under this agreement it furnished certain barricades, markers and signs as requested by Tobin-Clarkson on a rental basis. The ownership of the signs remained that of Safe-T-Flare. It had no direct obligation either to the state or the

public, although it did undertake to maintain them and replace any that were destroyed or damaged and to undertake periodic inspections of its equipment. The barricades, markers and signs were furnished and placed at the times and locations as directed by Tobin-Clarkson. The No. 2 sawhorse sign here involved was one of such pieces of equipment. There is no claim that this sign was of improper design or in any way defectively constructed. The charge is and the plaintiff's evidence showed that it was improperly weighted by the rock. The jury under proper instructions as to the liability of Safe-T-Flare found for it and the evidence and instructions justified such conclusion.

■ Because of the interrelationship of the parties, including the state and traveling public, Safe-T-Flare's liability to plaintiff could only be that of a joint tortfeasor. No vicarious liability existed as to it. It would be liable, if at all, jointly and severally with its codefendants. It has long been the law in Missouri that a new trial may be granted as to some defendants, where the liability among them is joint and several, if such can be done without confusing the issues. *Nix v. Gulf, Mobile and Ohio R. Co.*, 362 Mo. 187, 240 S.W.2d 709, 712[1] (1951); *Mount Arbor Nurseries v. New York C. & St. L. R. Co.*, 217 Mo.App. 31, 273 S.W. 410, 415[13] (1925); *Costello v. Kansas City*, 209 Mo.App. 155, 232 S.W. 165, 167[1] (1921). The error in this case was in the converse Instruction No. 3 as to defendants Tobin-Clarkson not as to the instructions relating to defendant Safe-T-Flare.

Converse Instruction No. 4 given for Safe-T-Flare presented no interwoven, overlapping, dependent or confusing issues as to all defendants.

The appellant raises as her Point II on this appeal the contention that the trial court erred in excluding certain proffered evidence pertaining to the claimed custom and practice of the defendants of weighting No. 2 warning signs with rocks placed on the cross members on this and other construction sites.

This proffered evidence which was excluded by the trial court consisted of the testimony of John Ramsey and Robert Bruce and certain photographs of highway construction sites. Both would have testified to the effect that they had witnessed instances of rocks placed atop barricades. Bruce had been a safety director for Tobin from 1969 until April, 1971. Ramsey had been safety director for Tobin from November, 1972 until March, 1975. Neither witness was acquainted with the job site in question. Their proffered testimony was to the effect that rocks had been placed on top of barricades before, during, and after the construction, but at different locations. Plaintiff offered this as collateral evidence of habit and custom.

■ In order to prove the absence or presence of due care, custom or practice evidence is admissible if the proof shows the witness possessed knowledge of the existence of the custom, the custom was a well-known and widespread trade custom and not confined to the practice of certain individuals only, and the custom is a definite, uniform, and known practice under certain definite and uniform circumstances. *Wright v. Chicago, Burlington & Quincy Railroad Co.*, 392 S.W.2d 401, 405[3, 4] (Mo. 1965); *Davis v. Gatewood*, 299 S.W.2d 504, 509–511[4–7] (Mo.1957). Isolated instances or several instances do not establish a custom. See *Smith v. Alaskan Fur Co.*, 325 S.W.2d 740, 743[1] (Mo.1959) where plaintiff testified she had seen a mat at defendants' entranceway when it was raining on previous occasions. This was held insufficient to show a custom.

■ The trial court cannot be said to have erred in excluding this testimony. The inadequacies of plaintiff's proffered evidence are numerous. The record nowhere discloses that this was a known and widespread custom. There was no evidence as to the similarities or dissimilarities between the present job site and the other proffered sites with respect to wind conditions and barricade placement. The testimony of Bruce and Ramsey was their observation at job sites operated by Tobin, when the site in

question was that operated by Clarkson, of which site they had no personal knowledge.

Some of the photographs offered by the plaintiff were admitted into evidence and others were excluded. Those excluded in some particulars labored under the same lack of qualifying evidence and some confusion in the record as to time, place and identity of the contractor involved.

The trial court obviously concluded that the proffered evidence fell short of admissible proof of custom and practice. It was within the trial court's sound discretion to exclude such evidence offered solely for the purpose of establishing custom and practice.

The judgment below is affirmed as to defendant Safe-T-Flare Rental Service, Inc. and reversed and remanded as to defendants J. A. Tobin Construction Company and Clarkson Construction Company for a new trial as to those defendants.

SHANGLER and PRITCHARD, JJ., concur in separate opinions filed.

MANFORD, J., concurs in majority opinion of SWOFFORD, Senior Judge.

CLARK, J., dissents in separate opinion filed.

SOMERVILLE, C. J., and TURNAGE, J., dissent and concur in dissenting opinion of CLARK, J.

PRITCHARD, Judge, concurring.

I fully concur in the opinion by Judge Swofford and the concurring opinion of Judge Shangler. These remarks are made because of matters posited in the dissenting opinion of Judge Clark which first attempts to cast doubt upon the submissibility of appellant's case.

The dissent says that there was no evidence that Clarkson or Tobin employees placed the [50 to 60 pound] rock on the barricade sign. All the facts in evidence point to a legitimate inference for the jury to apply, if it chose, that the defendants did cause the rock to be placed upon the sign. Those facts are these: Defendants, as joint adventurers, undertook the duty, by their contract with the Missouri Highway De-partment, to make the construction area safe, as the majority opinion states, "for handling traffic, barriers, barricades, signs, flagmen, and warnings necessary to protect members of the travelling public using the highway during the construction project." They thus had the exclusive *control* of the area. Under the common law, defendants undertook a *nondelegable* and *continuing* duty to members of the travelling public to make the area safe and not to permit any condition which could cause an unreasonable risk of harm to those members.

The evidence shows that rocks had been placed on the signs prior to the occurrence in question. Clearly the rock was on the sign which driver Ballard struck, which rock was precipitated through the right windshield striking passenger appellant in the face. There was evidence that defendants Clarkson and Tobin determined the placement and number of signs on the project. The collision with the sign happened on Sunday shortly after noon. On the day before, a Saturday, Clarkson's job superintendent and its safety director were on the job site, and Safe-T-Flare's employee was there on Friday. It was not shown whether employees were working on Saturday, but certainly they would not have been working on Sunday. At any rate, there was ample opportunity to inspect the signs and weights, which witness Box testified should have been done daily. Rocks on the signs would have been in plain view and would have imparted notice to defendants.

No persons other than defendants would have had any direct interest in weighting the signs to keep them in place, and thus the statement in the dissent that "For all that appears, the rock could have been placed on the sign only moments or hours before the accident by persons unknown" is not only without substance, but ignores the jury's prerogative to draw a reasonable and legitimate inference from the facts in evidence. Although defendants denied that they caused the rock to be placed on the sign, if, as the above quote implies, there was an intervening cause, as by the act of an interloper, the burden of showing the

same was on defendants. See 65A C.J.S., Negligence, § 207, p. 462.

Appellant's expert testimony (Box) clearly established that there was a method of safely weighting these signs by the placement of sandbags at their bases. It would not have been an impractical undertaking to have done so, given the nondelegable nature of the duty imposed, or have performed a 24-hour surveillance for safety purposes.

In the case of *Joshmer v. Fred Weber Contractors, Inc.*, 294 S.W.2d 576 (Mo.App. 1956), defendant excavated a ditch along a road in front of an apartment building, and plaintiff fell into it when a board across it collapsed under her. The court noted that she was unsuccessful in her attempt to prove that either defendant placed the board which broke under her weight, but nonetheless affirmed her judgment upon the submission that defendants failed to provide a reasonably safe and secure footbridge across the excavation. At page 583[3, 4], that liability is imposed by reason of a tortious breach of duty imposed upon the contractor by common law, and "[he] may be liable even though he acted without negligence in creating the dangerous situation, and this liability exists regardless of the requirements of his contract with the highway authorities and irrespective of any liability on the part of the governmental body employing the contractor." This *Joshmer* case illustrates the nondelegable and continuing duty of a contractor of a public way to the travelling public during the course of construction.

The dissent next attacks the foreseeability aspect of defendants' duty to anticipate harm and unreasonable danger to the travelling public, and places emphasis upon this sentence: "The opinion therefore holds the contractors to a duty to anticipate that any vehicle traveling the adjacent highway may be subject to any of a limitless number of misadventures which will deprive the driver of control and cause the vehicle to leave the public road", and then the dissent proceeds to state that the possibility of breakdown at any particular time and loca-tion is no more than speculation and conjecture. Although relating in general to liability of governmental entities for defective conditions of highway shoulders, this statement is found in 39 Am.Jur.2d, Highways, Streets, and Bridges, § 488, p. 886: "With respect to injuries resulting from the condition of the shoulder of a paved or hard-surfaced road, a number of cases have recognized that there may be public liability, usually on the theory that there was a duty to exercise ordinary care to keep safe not only the part of the highway customarily used by the traveling public, but also that part contiguous to the traveled part. A number of other cases have taken the view that the shoulder of a highway is not constructed as a place on which to drive, and that irregularities therein are not defects such as to render it a menace to the traveling public and warrant the imposition of public liability for accidents arising therefrom. *However, even in these latter cases it is held that the shoulder of a highway must be maintained in a reasonably safe condition for use when the occasion requires, and liability may ensue where a traveler is forced onto the shoulder in an emergency, or moves thereon to pass an oncoming traveler, or otherwise inadvertently or necessarily uses the shoulder of the highway.*" [Italics added.] See also Anno. 52 A.L.R.2d 1403. In this case, Ballard's leaving the travelled portion of the roadway was not the proximate cause of appellant's injury. Given the well-known principle of physics that a heavy object on top of a sawhorse would be projected toward a vehicle which struck it, the placement of the rock on the barricade was the precise cause of the injury. Not only was that result reasonably foreseeable but it was negligence as a jury could find. Note the case of *The State of Arizona and Ashton Construction Co., Inc. v. Cress*, 22 Ariz.App. 490, 528 P.2d 876 (1974), where deceased struck a large 55-gallon drum which had a stone which weighed about 18 pounds, placed by the contractor, to prevent it from blowing over, which passed through the windshield causing his death. The court held, page 879, "The question of whether

placing large stones on barrels on the centerline of the highway was a breach of that duty [to maintain the roadway in a safe condition] was properly left to the trier of fact. There was sufficient evidence before the jury to support the verdict. The defendants should have anticipated that such a barricade could create an additional hazard to the user of the highway." The Arizona court disagreed with *Larsen v. Johnson*, 21 Utah 2d 92, 440 P.2d 886 (1968), that a case of unanchored boulders on top of a barricade was susceptible to a motion for directed verdict or summary judgment, and noted the dissent in *Larsen* which stated " 'there was a genuine fact issue that transcended the summary judgment, triable by an arbiter thereof.' " Note also these cases bearing upon the duty to maintain sufficient barriers and not to create a trap for the travelling public: *Moore v. Geiger*, 6 Ohio App.2d 14, 215 N.E.2d 607 (1966); *Ferguson v. Ben M. Hogan Co.*, 307 F.Supp. 658 (W.D.Ark.1969); *Thorbjohnson v. Rockland-Rockport Lime Co., Inc. and City of Rockland*, 309 A.2d 240 (Me.1973), which held at p. 250[13], "If it is reasonably foreseeable that automobiles will deviate from the traveled path of the highway in the vicinity of the quarry, it cannot be said such deviation is an intervening efficient independent cause."

The dissent directs its final attack to the majority opinion's holding that defendants' Instruction No. 3 is prejudicially erroneous. The cases cited in the dissent hold mostly that there was no prejudicial or misleading error in the given instructions in those cases. None of those cited cases even remotely approach the positive misdirection of Instruction No. 3, which, as the majority opinion states, ignores the joint and several liability of defendants arising out of their joint enterprise contract.

The majority opinion is eminently correct.

SHANGLER, Judge, concurring.

The law imposes upon a contractor for highway improvements a nondelegable duty of care for the safety of persons who lawfully use the way. *Best v. Fred Weber Construction Co.*, 525 S.W.2d 102, 108[13, 14] (Mo.App.1975). That duty for safe passage extends to traffic on the contiguous shoulder area. *Penn v. Columbia Asphalt Company*, 513 S.W.2d 679, 687[11, 12] (Mo.App.1974). A contractor who creates a condition on the highway or on the shoulder dangerous to persons on the thoroughfare, therefore, is negligent. [That the excavation was to extend the pavement rather than to install another shoulder does not alter the construction as highway work and the attendant duty of care, nor render the risk of injury to a lawful motorist any the less foreseeable.] That is not to say that to be liable a contractor must foresee the precise danger or the exact consequence. Rather [as the principal opinion instructs], actionable negligence—the foreseeability that injury will result from conduct—is tested prospectively: what a reasonable person should anticipate. *Gruetzemacher v. Billings*, 348 S.W.2d 952, 957[3] (Mo.1961). The consequence is tested retrospectively: whether the injury was the normal result of the act or the omission. *Reckert v. Roco Petroleum Corporation*, 411 S.W.2d 199, 205[7] (Mo.1966); Restatement (Second) of Torts § 435 (1966). Thus, our law rests tort liability on the principle that, where conduct creates a foreseeable risk of harm to another, it does not avail to say that the very injury incurred or the full course of consequences could not be foreseen. *Boyd v. Terminal Railroad Association of St. Louis*, 289 S.W.2d 33, 37[2, 3] (Mo.1956); Harper & James, The Law of Torts § 20.5, p. 1147 (1956).

I understand the principal opinion to say that a highway contractor who excavates an open trench contiguous to the travel lanes of the roadway and undertakes to warn of that condition by a sign on the excavation weighted atop by a fifty-pound rock will anticipate, in the exercise of the duty of care the law expects, that a vehicle operated upon the roadway at a lawful speed and in a lawful manner—but which becomes unmanageable by a sudden failure of the steering mechanism—may veer from the paved roadway onto the shoulder excavation and impact with the sign so as to

traject the rock into the vehicle and injure the occupant. I agree with the principal opinion that the injury is within the compass of the original unreasonable risk of harm created by the contractor and so is actionable.

I concur.

CLARK, Judge, dissenting.

I dissent from the majority opinion and from the concurring opinion of Judge Pritchard which erroneously find a perceived instruction error to require a new trial and from the majority and concurring opinions of Judges Pritchard and Shangler which fail to acknowledge that the instruction issue is moot because plaintiff made no submissible case of liability. I would affirm the jury verdict for defendants and enter judgment thereon.

Additional facts, essentially undisputed but not fully recounted in the majority and concurring opinions, need be set out because of their relevance to the issue of liability.

The construction work on which Clarkson and Tobin were engaged consisted of the addition of a new traffic lane to the right of existing traffic lanes on the interstate highway route through Platte County. As a consequence of this work, the highway shoulder area as it formerly existed was displaced and was to be reconstructed to abut the new traffic lane. Preliminary to paving the added lane, Clarkson and Tobin had excavated the former shoulder to a depth of some twelve inches below and adjacent to the existing concrete slab. The latter, twenty-four feet in width, was open and unobstructed to traffic. Signs warning of the construction area ahead were placed 1000 to 1500 feet to the south and a reduced speed limit was posted. As additional warning of the hazard, Clarkson and Tobin had placed sawhorse type barricades in the excavated area where the shoulder had formerly been. These barricades bore the legend "Open Trench."

The Ballard vehicle in which plaintiff was riding was northbound and while traveling through the construction area, the car left the concrete slab and the right wheels dropped into the excavated trench. In this position, the undercarriage of the car made contact with the concrete pavement because the depth of the excavation was greater than the normal clearance for the car frame on an even surface. Despite the braking effect of the undercarriage dragging along the concrete, however, the car traveled some 600 feet in the excavation and knocked down three of the sawhorse barricades placed there. When the Ballard car finally reached the end of the construction area, it then returned to the paved roadway, but slid sideways at 35 to 40 miles an hour, crossed the northbound traffic lanes, jumped the median divider and came to a stop.

According to plaintiff's evidence, her injury was sustained when a rock was projected through the automobile windshield on the passenger side. Plaintiff herself had no recollection of the event, but Ballard, the only other occupant of the car, testified that immediately before striking one of the sawhorse barricades, as he was struggling to regain control of the car, he saw that a rock weighing 40 or 50 pounds was atop the barricade. He then observed the rock propelled through the windshield on impact between the car and the sign.

Evidence from Ballard and one other witness for plaintiff, both of whom regularly drove the route along the construction area, was that they had seen other signs weighted with rocks, the inference being one of common practice. Defendants' evidence was to the contrary. Because the accident here happened on a Sunday afternoon when no Clarkson or Tobin employees were at the job site, no defense witness was able to testify as to the condition of the sign that day. Tobin and Clarkson witnesses did testify, however, that there was no practice on this job of weighting signs with rocks, that none of defendants' employees had placed a rock on this particular sign and none had ever been seen on the sign.

The holding of the majority on the issue of liability rests upon two premises, neither of which is valid. The first assumes that

some evidence leads to the conclusion that defendants were chargeable, directly or by inference, with responsibility for placing the rock on the sign. There is no such evidence in the case. The second relies on a purported responsibility by highway contractors for the safety of persons in vehicles driven into construction areas where traffic is prohibited by posted warning signs and where passage is hazardous or impossible. No authority is cited for this proposition and there is none to be found in decisions by Missouri courts.

The majority opinion assumes the proof in plaintiff's case established that defendants placed the rock on the sign. Such is evidenced from the following statement in the opinion: "If the defendants placed a rock on top of the No. 2 sawhorse warning sign and to do so constituted a hazardous and dangerous condition, as testified by expert witness Paul Box, the plaintiff's evidence established both the duty and a breach thereof." There is no proof in this record either as to who was responsible for placing the rock on the sign or how long it had been there. Plaintiff's evidence was limited to the testimony of Ballard who saw the rock momentarily before impact and the observations by Ballard and another witness of rocks on other signs at other times. For all that appears, the rock could have been placed on the sign only moments or hours before the accident by persons unknown.

Moreover, the record fails to confirm the assertion in the concurring opinion of Judge Pritchard that absent direct evidence showing Clarkson and Tobin employees were responsible for placing the rock on the sign, that fact is a reasonable inference because defendants "had exclusive control of the area." There was no proof whatever that Clarkson and Tobin exercised dominion over the construction area to the extent of excluding passersby or that the area was fenced or guarded or even that any signs were posted except those warning motorists. The record does include the categorical denial by Clarkson and Tobin employees of rocks placed or observed to have been placed on the sign, against which plaintiff's

evidence showed only that a rock was on the sign before the car struck and that rocks were on other signs at other times. As to the latter, there was no proof of involvement by Clarkson and Tobin employees or that they had ever followed that practice.

Plaintiff's evidence warranted no finding directly or by inference that Clarkson and Tobin were responsible for placing the rock on the warning barricade, an element essential to the result reached by the majority. Perhaps in tacit recognition of this deficiency in proof, the concurring opinion of Judge Pritchard embarks on a totally different theory as evidenced by the statement that if in fact there were a possibility of the intervening conduct of a third party, the burden to show that was on the defendants. This concept, of course, would relieve plaintiff of showing more than the mere presence of the rock on the sign and would attribute fault to the defendants irrespective of whether they contributed to cause the dangerous condition or even had any knowledge of the condition. The majority opinion cites no authority for this proposition and the concurring opinion of Judge Pritchard cites only 65A C.J.S. Negligence, § 207, p. 462, which is inapposite to the proposition advanced. The C.J.S. text preceding the cited paragraph announces the rule that the burden of proving negligence is on the party asserting it and that burden of proof never shifts. If, however, the claimant has sustained his burden and the defendant claims an intervening, independent, proximate cause, the burden of going forward with that evidence is on the defendant. Here, there was no burden on Clarkson and Tobin to go forward with evidence to show the origin of the rock placement until plaintiff adduced evidence from which, according to plaintiff's jury submission, it could be concluded that Clarkson and Tobin were negligent in allowing the rock to be so placed and in not effecting its removal. Plaintiff's evidence totally failed of any such proof.

Even were it to be assumed that Clarkson and Tobin were obligated to foresee the

prospect of a wayward vehicle entering the excavation despite warning signs and the practical impossibility of motor car travel there, plaintiff's case was not tried or submitted on the liability theory the concurring opinion adopts. Under plaintiff's verdict directing instruction, plaintiff assumed the burden of proving, first, that Clarkson or Tobin employees allowed the barricade sign to be weighted with a rock and, second, that Clarkson or Tobin failed to use ordinary care to remove the rock. Under the theory of submission, plaintiff made no case.

The undisputed evidence established there was no Clarkson or Tobin employee on the job site the day of the accident, a Sunday, and no Clarkson or Tobin employee had any knowledge of the rock on the sign. There was no proof any Clarkson or Tobin employee participated or acquiesced in weighting the sign with a rock. Any inference to this effect is sheer speculation and conjecture. In the exercise of ordinary care, Clarkson and Tobin were, according to plaintiff's evidence, obligated to inspect the job once a day, an inspection which demonstrably could not have prevented plaintiff's injury because there was no proof as to how long the rock had been on the sign. In direct contradiction of the expert opinion in evidence, the concurring opinion suggests the duty of ordinary care required Clarkson and Tobin to perform 24-hour surveillance.

In sum, the majority and concurring opinions combine to find liability where no proof was made in essential particulars and to modify the theory of liability under which the case was tried and submitted to accommodate the deficient proof.

On an equally fundamental basis, the majority errs in concluding that Clarkson and Tobin were liable to plaintiff even if it be assumed that defendants did place the rock on the warning sign. The essence of the majority holding is that highway contractors must anticipate the prospect of vehicles entering prohibited areas by misadventure and therefore must make such areas reasonably safe for the passage of wayward vehicles without injury to the occupants. This proposition not only ignores former deci-

sions which limit the responsibility of contractors to the posting of adequate warnings and to the maintenance of the traveled way free of dangerous conditions, but would render it virtually impossible for any improvement to be built at or near an existing road without assumption by the contractor of economically prohibited liability.

It should be noted that here, unlike the situation in *Penn v. Columbia Asphalt Company*, 513 S.W.2d 679 (Mo.App.1974), there was no shoulder area and no entitlement to regard the construction area as a part of the public highway. The excavation to add an additional traffic lane had removed what formerly was the highway shoulder and had created a condition rendering any vehicle traffic on what had been the shoulder either impossible or extremely hazardous. That danger was present as a part of the work itself and precluded any use of the area adjacent to the highway for any travel whatever.

The majority opinion holds the contractor liable to eliminate a condition in the excavation posing a potential hazard to occupants of a vehicle which descends into the excavation. That liability must, in turn, depend on the obligation of the contractor to anticipate that a vehicle will enter the excavation despite ample advance warning signs of the danger ahead and despite the physical features of the work precluding any traffic at all, accidental or intentional, beyond the edge of the concrete slab. This enlargement of liability based on foreseeable risk of harm to another exceeds the bounds which have formerly prevailed.

Reasonable anticipation of danger is essential to establish actionable negligence. Existence of negligence in a particular situation depends on whether a reasonably prudent person would have foreseen the danger and provided against it. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976). The duty of anticipation is not that of prescience; it is the duty to be aware of reasonable potential for harm or injury. A person is not required to look for danger where he has no cause to anticipate it and, in so doing, one is entitled to assume and act

upon the assumption that others will exercise due care for their own safety, in the absence of notice to the contrary. *Taylor v. Dale-Freeman Corporation*, 389 S.W.2d 57, 61 (Mo.1965).

The duty to foresee risk of harm, even though tested retrospectively as the majority requires, does not encompass every possible event. Rather, the test is premised on a duty to guard against probable events of sufficient moment to induce reasonable persons to take precautions. *Zuber v. Clarkson Construction Co.*, 363 Mo. 352, 251 S.W.2d 52 (1952). The occurrence here, the unanticipated steering failure in Ballard's car, was a possibility of remote dimensions and involved a combination of circumstances, the location, the speed of the car, the wayward path the uncontrolled car assumed and other factors far beyond any anticipatory duty owed by Clarkson and Tobin in conducting their construction work. Indeed, were contractors obligated to guard against any and all eventualities, as the majority would rule, they would enter any construction project as virtual insurers of the motoring public.

A case of remarkably similar facts is found in *Larsen v. Johnson*, 21 Utah 2d 92, 440 P.2d 886 (1968). There, the highway construction contractor had placed "small A-frame-type-flasher-signal" barricades along an interstate highway to keep traffic from entering the construction area. The plaintiff motorist crashed into one of the barricades which was weighted with an 85-pound rock. The impact propelled the rock through the windshield causing the injury which produced the suit. There, as here, plaintiff's claim was predicated on the asserted negligence of the contractor in placing the rock on the barricade.

In affirming summary judgment for the contractor, the court noted that the defendant was under a duty to place some warning barrier to keep motorists from driving into the construction area, and that the barrier would have to be constructed of something substantial and durable. In addition, the likelihood that a warning sign would be blown over indicated the propriety of stabilizing the barricade with some type of weight or ballast. The court then posed the question of whether, by stabilizing the barricade with an 85-pound rock, the contractor should have foreseen that it was exposing the plaintiff and other motorists to an unreasonable risk of harm. The court then stated:

"In insisting on an affirmative answer to that question the plaintiff is confronted with some difficulties. The first is that it is ordinarily not unreasonable to assume that drivers will keep their cars on the portion of the highway designated for travel; moreover, that they will keep on their own side of the highway and will not cross clear over the wrong side and into barriers erected for their protection."

The majority here breaks new ground in holding a highway contractor responsible for the safety of persons in a vehicle driven into a construction area where traffic is prohibited. The analogy to *Best v. Fred Weber Construction Co.*, 525 S.W.2d 102 (Mo.App.1975) is misplaced as is the citation in the concurring opinion to *Joshmer v. Fred Weber Contractors*, 294 S.W.2d 576 (Mo.App.1956). In *Best*, the accident occurred when the automobile left an exit ramp on a sharp curve unmarked by warning signs. In *Joshmer*, a walkway board placed across an excavation broke when the plaintiff sought to use it as the only access to a nearby apartment building. In both cases the accident site was not only a place where the injured party had a right to be but it was a place intended for travel by automobiles or pedestrians. The construction contractor therefore had the duty to make the way safe because traffic there was expected. The cases do not support and no other cited Missouri case supports the proposition on which the majority opinion turns—that a contractor must make reasonably safe a construction area not intended for passage.

The majority next errs in concluding that the jury verdict for defendants Clarkson and Tobin must be set aside and a new trial granted for instruction error. As demonstrated by the cases hereafter cited, similar

errors where instructions have inadvertently confused conjunctive and disjunctive associations of multiple parties have repeatedly held the error harmless. No analogous case is cited to support the result reached by the majority.

The theory on which plaintiff's case was tried was the same as to all the defendants, that each was responsible to maintain the signs in a manner reasonably safe to the traveling public and that each had failed to use ordinary care to discover the rock atop one sign and remove it. In like manner, plaintiff's verdict directing instructions posed the same requisite findings for recovery against each defendant, with the instructions grouped, however, as to Clarkson and Tobin in one and Safe-T-Flare in another.

Plaintiff's petition alleged and her proof established that Clarkson and Tobin were engaged in a joint venture, the consequence of which was that each was responsible for the acts of the other. Neither pleading nor evidence presented any contest on the joint liability of Clarkson and Tobin and no suggestion appears in the trial record that either Clarkson or Tobin claimed any possible immunity for acts or omissions attributable to its co-venturer. Indeed, Clarkson and Tobin were treated throughout as a single entity, they were represented at trial by the same lawyer and they presented a unitary defense. Moreover, the evidence bearing on liability was indistinguishable. A failure to have personnel on hand to inspect the signs and thus remove any potential hazard was equally a charge leveled without differentiation between the companies.

The majority awards a new trial to plaintiff on the ground of instruction error as to a non-issue. In asserting that the instruction was a "violent misdirection" and that the jury was misled and confused, the majority seizes upon a minor deviation in the converse instruction which demonstrably could not have prejudiced plaintiff's case, they ignore all practical considerations of how the case was submitted and they violate the direction of Rule 84.13(b) that no judgment be reversed for error which does not materially affect the merits of the action.

Whether an instruction is confusing or misleading depends on how it would be understood by a jury composed of ordinary intelligent laymen when it is read and considered with the other instructions. *Sanfilippo v. Bolle*, 396 S.W.2d 690 (Mo.1965). It is axiomatic that all the instructions must be read together. *Goodwin v. S. J. Groves & Sons Company*, 525 S.W.2d 577 (Mo.App. 1975). Even though one instruction, standing alone, may be defective, if the instructions as a whole completely instruct the jury and do not permit speculation or conjecture, the instructions are proper. *Miller v. Ranson and Company*, 407 S.W.2d 48 (Mo.App.1966). No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action. Rule 84.13(b).

In *McGowan v. Hoffman*, 609 S.W.2d 160 (Mo.App.1980), two plaintiffs, driver and passenger, claimed damages for injuries sustained when defendant's car "rear ended" the vehicle plaintiffs occupied. Separate verdict directing instructions posed the claim of each plaintiff, but defendant's converse as well as plaintiffs' damage instruction combined the damage element with the result that literally read, neither plaintiff could recover unless the jury found that both had sustained damage. Finding no prejudice in what were manifestly incorrect instructions linking the plaintiffs' injuries, this court there noted that no juror with any intelligence could be misled by the instructions, particularly because there were numerous and constant trial references to the individuality of plaintiffs' claims.

In *Colonial Construction Co. v. Sharp Industries, Inc.*, 421 S.W.2d 551 (Mo.App. 1967), the verdict directing instruction provided only for a verdict against both defendants whereas the forms of verdict contemplated a possible finding against only one, the actual result in the case. The omission was of a verdict director which would have authorized the verdict the jury returned. Finding that the instruction er-

ror did not materially affect the merits of the action, the judgment was affirmed despite the lack of an appropriate verdict directing instruction.

As the majority opinion correctly notes, there is no precedent in point for the result the majority accomplishes here. Two of the cases cited, *Long v. REA Express Co.*, 573 S.W.2d 62 (Mo.App.1978) and *Mayberry v. Clarkson Construction Co.*, 482 S.W.2d 721 (Mo.1972), were, like *McGowan, supra,* instances where the offending instructions linked the damage claims of multiple plaintiffs. *Davis v. St. Louis Southwestern Railroad Co.*, 444 S.W.2d 485 (Mo.1969) was an action against plaintiff's employer for failure to provide a safe workplace and, on derivative liability, for the negligent act of a fellow employee. The instruction advised the jury that the employer's liability was to be measured by his fault alone.

None of these cases bear on the subject of error in an instruction as to issues not in controversy. In *Long* and *Mayberry,* the nature and extent of each plaintiff's injuries were disputed. In *Davis,* the negligence of both employer and fellow employee was contested. The instructions were misdirections of consequence and prejudicial to plaintiff because they authorized verdicts on controverted issues by misstatements of the law applicable to the subject contested. In contrast, the defect in the converse instruction in the present case, the joint responsibility of Clarkson and Tobin, was never in question.

Here, it is inconceivable that the jury would have ferreted out the technical variance between the verdict director and the converse when nothing else in the case even inferentially suggested that the issue of several liability of Clarkson and Tobin was before them. The issue simply was not in the case and it strains credulity to accept the majority's assertion that the merits of plaintiff's case were affected. Considered as a whole, the instructions adequately informed the jury and the majority errs in its holding to the contrary. With appropriate conformity to the reasoning of *McGowan, supra,* and similar cases, the error in the converse instruction should be recognized as harmless and the judgment should be affirmed.