Aileen Bounds DICK,
Plaintiff-Respondent,

v.

SCOTT CONSTRUCTION COMPANY,
Defendant-Appellant.

No. 36842.

Missouri Court of Appeals,
St. Louis District,
Division Three.

July 6, 1976.

Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Samuel Richeson, Hillsboro, for defendant-appellant.

Bloodworth & Bloodworth, Wm. Howard Bloodworth, Poplar Bluff, for plaintiff-respondent.

GUNN, Judge.

Plaintiff-respondent ran into the rear end of defendant-appellant's road grader and suffered severe injuries for which she has sought recompense. The first trial of this case resulted in a judgment for $35,000 in favor of plaintiff and against the defendant. The defendant appealed the first judgment to the Supreme Court and was successful in obtaining a reversal and remand for new trial of the case on the basis of an improper submission to the jury. *Bounds v. Scott Construction Co.,* 498 S.W.2d 765 (Mo.1973).[1] We are now on the appeal of the second trial in which the plaintiff was favored with a jury verdict of $60,050. Trusting that it will fare better on a third try, defendant has once more appealed, alleging as points of error in the second trial that: 1) plaintiff's verdict director was erroneous; 2) that the trial court failed to find plaintiff contributorily negligent as a matter of law; 3) that defendant was protected from liability by the doctrine of sovereign immunity; 4) that the defendant was not negligent as a matter of law; 5) that certain evidence as to plaintiff's injuries was outside the scope of the pleadings; 6) that portions of the closing argument of plaintiff's counsel were improper. Regrettably, we find prejudicial error in plaintiff's verdict directing instruction and must once more remand this somewhat jaded litigation for further jousting by the parties in the courtroom arena.

The accident involving plaintiff's auto and defendant's road grader occurred on a newly constructed portion of Highway 21, one mile south of Ellington. On the day of the accident, the paving of the highway had been completed, and the defendant construction company under a contract with the State Highway Commission was building and shaping the shoulder by the use of a road grader within the northbound lane

---

1. Plaintiff has married since the first trial, hence the change in the style of the case.

of traffic. The plaintiff testified that she was driving north in the northbound lane when she first observed defendant's road grader 300 feet in front of her in the north-bound lane. She stated that at the time she was moving between 50–55 miles per hour and that the road grader was backing up. Plaintiff related that she applied her brakes and turned her steering wheel to the left, but because of dirt and pea gravel on the road's surface[2] her auto skidded 137 feet directly into the back of the road grader. Plaintiff also testified that approximately two miles south of the scene of the accident she had noticed a diamond shaped caution sign, but she had seen no other warning signs or flagmen leading to the point of impact. She had taken the same route the previous day and had seen no construction vehicles on the highway.

The operator of defendant's road grader testified that he was in the process of back-ing up in the northbound lane to make a final pass over the shoulder when he first noticed plaintiff's auto 740 feet away. Upon seeing plaintiff, the operator looked to see if any southbound traffic was ap-proaching, and seeing that the southbound lane was clear, he waved to plaintiff to pass. The operator estimated plaintiff's speed at 70–80 miles per hour. Witnesses were called on behalf of defendant to testi-fy that there was a fine array of signs located along the highway warning ap-proaching motorists that road construction was in progress. The contradictions in tes-timony are for the jury to resolve. *Dintel-man v. McHalffey,* 435 S.W.2d 633 (Mo. 1968); *Lamb v. Heiligers,* 532 S.W.2d 820 (Mo.App.1975).

Plaintiff submitted her case on the theory that defendant negligently operated its road grader in a lane reserved for mov-ing traffic. Plaintiff's verdict directing in-struction which is the subject of defend-ant's first assault is as follows:

"Your verdict must be for plaintiff on plaintiff's claim for damages if you be-lieve:

First, defendant *operated* its motor grad-er in a lane reserved for moving traffic, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negli-gence the plaintiff sustained damage,

unless you believe plaintiff is not entitled to recover by reason of Instruction No. 4." (emphasis added).

The foregoing instruction modified MAI 17.20 by substituting the word "operated" for the word "stopped" in paragraph First. The defendant contends that the modifica-tion is prejudicially erroneous, in that it omits a factual basis upon which the plain-tiff can recover and is misleading and con-fusing. We are constrained to agree with defendant in this regard.

Plaintiff's verdict director is erroneous, for it fails to hypothesize a negligent act on the part of the defendant. The jury is instructed to hold defendant liable if they find that the road grader was being operat-ed in a lane reserved for moving traffic and that defendant was thereby negligent. Yet, plaintiff concedes that the presence of the road grader in the northbound lane was not negligence per se, as it necessarily had to be in the northbound lane to perform the road shoulder construction work defendant was required to do. Plaintiff submits that it was not the fact that the road grader was in a lane reserved for moving traffic (the northbound lane in this case) that created the negligence, but that it was the presence of the road grader in the northbound lane without giving adequate warning to motor-ists—the plaintiff, in particular—of the presence of the grader. Also, plaintiff sug-gests that accumulation of dirt and gravel on the roadway caused by defendant's oper-

2. The testimony of the parties was in sharp conflict as to the amount of dirt and gravel on the road. The plaintiff presented evidence that there was between one quarter inch and four inches of dirt and gravel on the northbound lane to the point of impact. A State trooper testified that there was dirt and gravel one quarter inch thick, and defendant's construc-tion superintendent testified that there was only a little dust and gravel on the road. We leave it to the jury to resolve such conflicts.

ations contributed to its negligence. Thus, under plaintiff's own theory of recovery, the mere presence or operation of the road grader in the northbound lane was not by itself negligence, but something more, such as the failure to provide adequate warning of the presence of the grader or that pea gravel was permitted to accumulate on the road, was required to establish defendant's negligence. But plaintiff's verdict director speaks only of the fact that defendant "operated" its road grader in a lane reserved for moving traffic which plaintiff admits is not, without more, negligence. Therefore, without requiring the jury to resort to substantial conjecture, paragraph First fails to hypothesize any facts which constitute negligence under the circumstances of this case. Consequently, the plaintiff's verdict director failed to submit to the jury a theory upon which recovery could be based. The modification of MAI 17.20 by replacing the word "stopped," which within the instruction constitutes a specific act of negligence, with the word "operated," which under the facts of this case does not constitute an act of negligence, was error.

Plaintiff contends that the term "operated" encompasses more than the fact that the road grader was located and working in the northbound lane; that a fair reading of the word "operated" includes the condition that there was inadequate warning and an improper accumulation of pea gravel in the northbound lane. We disagree. Without any suggestions as to why defendant's operation of the road grader was somehow improper the jury was improperly given a roving commission to speculate as to how the act of operating the road grader was negligent. *Moore v. Quality Dairy Co.,* 425 S.W.2d 261 (Mo.App.1968). If, as plaintiff asserts, the defendant's act of negligence in operating the road grader was by reason of failure to warn or improper maintenance of the road surface, the jury should have been so instructed.

We also find plaintiff's verdict director to be misleading and obfuscatory, and "[i]nstructions may not be confusing, misleading, inadequate nor prejudicially errone-

ous. . . . (cite omitted) The language of the instruction should be so plain that no doubt can arise as to its meaning. The spirit of jury instructions is to use 'simple, direct, concise and unambiguous words and phrases that do not require further definitions.'" *Woodford v. Illinois Central Gulf R.R. Co.,* 518 S.W.2d 712, 716 (Mo.App.1974). See also Rule 70.01(e). Plaintiff's verdict director is manifestly dissonant with the foregoing rubric. The term "operated" as used in the instruction has more than one meaning. It can be construed to refer solely to the fact that the road grader was operating in the northbound lane, that is, the jury could find for plaintiff merely because the defendant's road grader was performing construction work on the highway. Yet, plaintiff acknowledges that such fact does not form a sufficient basis for a liability, and under such an instruction no act of negligence is hypothesized. The other alternative available to the jury would be to improperly speculate as to what conditions or circumstances made the road grader's operations somehow negligent. The fact that an accident occurred does not establish negligence. *Powell v. Watson,* 526 S.W.2d 318 (Mo.App. 1975). Neither, as plaintiff admits, did the sole fact of defendant's operating the road grader on the highway constitute negligence. We must therefore reverse and remand the case for a new trial.

We now dispose of the other points of alleged error raised by the defendant. Since we have held that the plaintiff's verdict directing instruction was improper we need not reach the defendant's second point relating to that instruction—that the theory submitted in the instruction was not within the plaintiff's pleadings.

■ The defendant also contends that the plaintiff was contributorily negligent as a matter of law because she failed to keep a lookout, drove at an excessive speed and failed to take evasive action. This exact contention was raised in the first appeal of this case to the Missouri Supreme Court. Based on the same material facts as present in the record before us, the Supreme Court

held that the plaintiff was not contributorily negligent as a matter of law under any of the theories presented by the defendant. The question of plaintiff's contributory negligence was determined to be a question for jury resolution. *Bounds v. Scott Construction Co.,* 498 S.W.2d 765, 768 (Mo.1973).

■ An additional point raised by the defendant on this appeal concerns the trial court's refusal to submit to the jury a proposed instruction offered by the defendant that would have provided the defendant with the protection of governmental immunity if the jury were to find that the defendant performed the construction work on the shoulder in compliance with the Missouri State Highway Commission's plans and specifications. This point was specifically dealt with and denied by the Supreme Court in the defendant's first appeal, *Bounds v. Scott Construction Co.,* supra at 768, and we are bound by that ruling. See also *Best v. Fred Weber Construction Co.,* 525 S.W.2d 102 (Mo.App.1975), holding that a road contractor may not hide behind a contract with a public authority to escape liability for tortious conduct.

■ The defendant asserts that the trial court erred in failing to grant the defendant's motion for a directed verdict.

"In reviewing the action of a trial court in ruling on defendant's motion for a directed verdict . . . the reviewing court must determine whether plaintiff made a submissible case, and in so doing, the plaintiff is entitled to the most favorable view of all the evidence and must be given the benefit of all favorable inferences to be drawn therefrom." *Boyle v. Colonial Life Ins. Co.,* 525 S.W.2d 811, 815 (Mo.App.1975).

Viewing the evidence as commanded by the foregoing maxim, we conclude that a submissible case was made. From the evidence and the reasonable inferences drawn therefrom, the jury could have found that the defendant failed to adequately warn a northbound motorist that a road grader was working in that lane. Testimony of the plaintiff and her witnesses was to the effect that no flagmen were present and that whatever warning signs were present were not sufficient to alert a motorist to the fact that the northbound lane would be blocked. Furthermore, the jury could have found that there was between one quarter and four inches of dirt and pea gravel left on the road by the defendant immediately south of the scene of the accident. Such facts could be sufficient to demonstrate the defendant's negligence, and the trial court properly denied the defendant's motion for a directed verdict. See *Morris v. Israel Brothers, Inc.,* 510 S.W.2d 437 (Mo.1974); *Best v. Fred Weber Construction Co.,* supra.

■ The defendant asserts that since plaintiff's petition did not specifically allege particular injuries the trial court erred in overruling motions to strike evidence relating to alleged brain damage, double and blurry vision, headaches and a shortening of a leg. The relevant portion of plaintiff's petition states:

" . . . as a direct and proximate result of the carelessness and negligence of the defendant as aforesaid, the plaintiff sustained the following injuries, to wit: Plaintiff's head, . . . body, legs, ankles . . . were bruised, contused, wrenched, torn, misplaced, cut, lacerated, broken, wounded, sprained, diseased, scarred and disfigured, and the bones, muscles, ligaments, tendons and nerves in plaintiff's head, . . . legs, ankles . . . were severely shocked, misplaced, torn loose, bruised, mangled, diseased, scarred and disfigured and rendered useless. Plaintiff states that she suffered a concussion of the brain and the function of this plaintiff's entire nervous system was shocked and her . . . head, . . . limbs . . . and the . . . nerves, tendons and ligaments thereof were bruised, contused and impaired . . . ."

The trial court correctly overruled defendant's objection to plaintiff's evidence of impaired vision and hearing, headaches and shortened leg and found that such injuries were a consequence of the accident as pleaded. Although Rule 55.19 requires items of special damage to be specifically

stated in the petition, the injuries alleged in the petition were sufficiently stated with enough breadth and detail to embrace the specific injuries introduced into evidence. The allegations relating to injuries to plaintiff's head, including the concussion, were sufficient to encompass evidence of dizziness, blurred and double vision, headaches and defective hearing. The allegations as to injuries as to plaintiff's leg and limbs were sufficient to cover the shortened leg. *Erbes v. Union Electric Co.,* 353 S.W.2d 659 (Mo.1962); *Alfultis v. Bi State Development Agency,* 439 S.W.2d 206 (Mo.App. 1969); *Fleddermann v. St. Louis Transit Co.,* 134 Mo.App. 199, 113 S.W. 1143 (1908). Our holding on this point is further buttressed by the fact that defendant made no motion to make the allegations of injury more definite and certain—a significant factor. *Condos v. Associated Transports, Inc.,* 453 S.W.2d 682 (Mo.App.1970).

Finally, defendant asserts that the trial court erred in allowing plaintiff's counsel to comment in closing argument on the failure of a State trooper called as a defense witness to testify regarding the existence of warning signs, as the trooper was equally available to plaintiff. Since this point is not likely to reoccur on the retrial of the case we need make no finding as to whether such comment was error vel non.

Due to the prejudicial error of submitting plaintiff's verdict directing instruction we reverse the judgment and remand for new trial.

SIMEONE, P. J., and RENDLEN, J., concur.