Sean M. CASEY and Adam N. Casey, by their next friend Marion O. Morgan,

and

Marion O. Morgan and Ernestine Morgan, Appellants,

v.

FLORENCE CONSTRUCTION COMPANY, INC., Respondent.

No. WD 52178.

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Daniel DeFoe, Blue Springs, for appellants.

Mark Johnson, Kansas City, for respondent.

SPINDEN, Judge.

Terri Casey died in 1994 when the motorcycle she was riding crashed headon with a pickup in a construction area in Independence. Her children and parents filed a wrongful death suit against Florence Construction Company, the general contractor for the highway construction project. Florence Construction filed a motion for summary judgment which the circuit court granted. Casey's children and parents appeal. We reverse and remand.

The crash occurred on Mo. 291 on March 13, 1994, when Jeanette McIntire drove her pickup southbound across the highway's center line into a lane designated for northbound traffic. Casey was a passenger on a motorcycle traveling northbound on Highway 291. The vehicles collided headon.

In their petition for damages for wrongful death, Casey's children, Sean and Adam Casey, and her parents, Marion and Ernestine Morgan, claim that Florence Construction was negligent and caused or contributed to causing Casey's death by (1) not placing proper signals and warnings to indicate two-way traffic in the area; (2) using a confusing and misleading traffic control, and (3) making the area appear to authorize only one-way traffic.

Florence Construction was working on the highway under contract with the Missouri Highway and Transportation Commission. Florence Construction subcontracted with Gun–Ko Traffic Control, Inc., to provide signs and warning devices for traffic control in the area.

The commission designed the traffic control for the construction project. Its design called for signs, pavement markings, specially-marked barrels and other traffic control devices. The commission retained authority to direct Florence Construction to make changes in the way it controlled traffic at the site. Commission representatives inspected traffic every day during construction.

Walter Waugh, the commission's resident engineer who was in charge of the construction project, and Jim McClanahan, the commission's inspector, testified that Florence Construction's traffic control was in compliance with the commission's contract and directives when the accident occurred and that it was the same then as it had been for months before the accident. Waugh and McClanahan testified that the traffic control was safe and proper at the time of the accident and that Florence Construction had no

reason to believe that the traffic control was unsafe or dangerous to the general public.

Casey's children and parents assert that the circuit court erred in granting Florence Construction's motion for summary judgment because (1) it relied upon Florence Construction's compliance with the commission's contract to satisfy Florence Construction's obligation to control traffic properly and (2) genuine issues of material fact remain as to whether Florence Construction knew, or had reason to believe, that its actions were dangerous or likely to cause injury to third parties. We agree that a genuine issue of material fact remains; therefore, the circuit court erred in granting Florence Construction's motion for summary judgment.

A litigant moving for summary judgment must establish that the parties are not disputing any genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation,* 854 S.W.2d 371, 376 (Mo. banc 1993). When we review the granting of a motion for summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered and accord the other party the benefit of all reasonable inferences from· the record. *Id.*; Rule 74.04.

The circuit court concluded that Florence Construction was not liable to the Casey family because it obeyed the commission's contract and directives without negligence. Indeed, "where a servant obeys the orders of his master without negligence, the servant will not be liable for injury to third persons unless he knew, or had reason to believe, that such actions were dangerous and likely to cause injury to a third party." *Beyerbach v. Girardeau Contractors, Inc.,* 868 S.W.2d 163, 167 (Mo.App.1994). *See also Southwestern Bell Telephone Company v. Clarkson Construction Company, Inc.,* 782 S.W.2d 404, 406 (Mo.App.1989). The circuit court stated that no evidence in the record established that Florence Construction knew, or had reason to believe, that by following the commission's directions its actions were dangerous or likely to cause injury to third parties. We disagree.

Casey's children and parents responded to Florence Construction's motion for summary judgment by filing an affidavit by their expert, Ronald W. Eck, which said:

... I am employed as the Director of Engineering Research at the West Virginia University. I received my Ph.D. degree in transportation engineering in 1975. I currently am a professor of civil engineering and teach graduate and undergraduate students in my employment. I am a registered professional engineer in the state of West Virginia....

... I have reviewed a copy of the motion for summary judgment ("Motion") filed in the Case, and all supporting materials submitted by Florence in support of the Motion, including a collection of documents entitled Exhibits to Defendant Florence Construction Company's Motion For Summary Judgment. I have also reviewed the following materials: the petition for wrongful death filed in the Case; two volumes of the deposition of J.W. McClanahan; copies of photographs provided to me by counsel for plaintiffs which I understand have been distributed to counsel for the defendants; the contract awarded by the Missouri Highway and Transportation Commission to Florence Construction Company concerning the highway construction project at issue in the Case; a copy of the subcontract between Florence Construction Company and Gun–Ko Traffic Control, Inc.; the Missouri Standard Specifications For Highway Construction, 1990 edition; copies of two videotapes of the construction area in the vicinity of Missouri 291 Highway and U.S. 24 Highway in Independence, Missouri, one prepared by the state highway department and the other prepared by a private individual named Jeanette McIntyre; and a copy of the police report prepared by the Independence Police Department concerning the death accident on March 13, 1994 involving Terri L. Casey.

... After performing my review of the materials in the Case, I offer the following based upon my education, training, and experience, and state the same with a rea-

sonable degree of certainty in the engineering profession as follows:

a. In general, the contractors Florence Construction Company and Gun–Ko Traffic Control, Inc., and each of them, knew or had reasons to know that the traffic controls that existed in the area of Missouri 291 Highway and U.S. 24 Highway in Independence, Missouri, where the accident occurred on March 13, 1994, ("Accident Area") were dangerous and a hazard to life and were likely to cause and could cause accidents and injury;

b. In particular, the dashed yellow lines implied a passing zone and therefore the pavement markings should have been solid double yellow in the Accident Area;

c. In particular, the almost completed northbound lanes of Missouri Highway 291 north in the vicinity of and north of the U.S. 24 Highway overpass gave southbound motorists the impression that northbound lanes were open to traffic.

d. In particular, the transition from solid double yellow pavement markings in the vicinity of the northernmost arrow board north the the [sic] U.S. 24 Highway overpass confirmed the conclusion mentioned in c. above;

e. In particular, the Accident Areas should have had two way traffic signs or arrows indicating two way traffic at regular intervals to advise southbound motorists on Missouri 291 Highway to expect oncoming northbound traffic in the Accident Area in the vicinity of the U.S. 24 Highway overpass;

f. In particular, because traffic control devices in the Accident Area may have conformed to project specifications and directives does not necessarily make a highway construction project work zone layout safe. The contractors in this Case, each of them, had a duty to provide a reasonably safe road. The contractors in this Case failed that duty and did not provide a proper and safe road. The traffic control at the place and date of the accident in which Terri Lynn Casey died was not proper and was not safe. The contractors in this Case should have thought that the traffic control at the place and date of the

accident was dangerous or likely to cause injury. The work zone in the Accident Area constituted a hazardous traffic flow condition that was hazardous and confusing. The contractors in the Case, and each of them, knew or had reason to believe that the work zone in the Accident Area and the roadway were dangerous and likely to cause injury.

... The condition of the roadway and the work zone in the Accident Area as maintained by the contractors in the Case caused or contributed to cause the death of Terri Lynn Casey.

■ This affidavit established a genuine issue of material fact as to whether Florence Construction knew, or had reason to believe, that its traffic controls were dangerous or likely to cause injury to third parties. Under Rule 74.04, a genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *ITT Commercial Finance Corp.*, 854 S.W.2d at 382. Eck opined from his review of the evidence that Florence Construction knew, or had reason to know, that its traffic controls were dangerous. Such a review and formulation of an opinion is sufficient to demonstrate the existence of a genuine issue of fact. *See Southard v. Buccaneer Homes Corporation*, 904 S.W.2d 525, 529 (Mo.App.1995).

Florence Construction contends that Eck's affidavit is fatally flawed because it is based on hearsay and contains legal opinions, conclusions and speculation. It also argues that Eck's affidavit is not based upon personal knowledge because Eck did not observe the circumstances of the accident, the layout of the accident scene or the construction site.

■ Experts may base their opinions on personal observations or on competent evidence in the case, or on both. *Orscheln Brothers Truck Lines, Inc., v. Ferguson Manufacturing, Inc.*, 793 S.W.2d 525, 532 (Mo.App.1990). *See also State of Missouri ex rel. K.R. by May v. Brashear*, 841 S.W.2d 754, 757 (Mo.App.1992). In any case, experts will be filtering the facts through their specialized knowledge gained through education, training, and experience.

Eck in making his expert opinion reviewed Florence Construction's motion for summary judgment and the exhibits filed with the motion, the petition, the deposition of J.W. McClanahan, copies of photographs, the contract between the commission and Florence Construction, the subcontract between Florence Construction and Gun–Ko, the Missouri Standard Specifications for Highway Construction, copies of two videotapes of the construction area, and a copy of the police report of the accident. From his review of the evidence, Eck concluded "with a reasonable degree of certainty in the engineering profession" that Florence Construction Company knew, or had reason to know, that the construction area's traffic controls were "dangerous and a hazard to life and were likely to cause and could cause accidents and injury[.]"

Contrary to Florence Construction's contention, Eck was not required to make personal observations of the accident or construction sites. Section 490.065.3, RSMo 1994, provides that an expert may base his opinion on those facts "perceived by or made known to him at or before the hearing" so long as the facts or data are "of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject[.]" That he based his opinions on competent evidence was sufficient. *See State ex rel. K.R.*, 841 S.W.2d at 758. Florence Construction does not contend that any of the evidence on which Eck relied would be inadmissible at trial. As the court said in *Koontz v. Ferber*, 870 S.W.2d 885, 893 (Mo. App.1993), "It is certainly proper for [an] ... expert to state an opinion as to whether plaintiff's theory is a theory held by other ... experts."

Moreover, § 490.065.2 says that an expert's opinion "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, to the extent Florence Construction complains that Eck's opinion embraces legal conclusions, its contention is without merit.

Eck's opinion is based on his education, training, and experience as to what a reasonably prudent highway engineer knew or should have known under the same or similar circumstances. *See Mattes v. Black and Veatch*, 828 S.W.2d 903, 907 (Mo.App.1992). This satisfied Rule 74.04(e)'s requirement that the affidavit "be made on personal knowledge." An expert can assert an opinion only because he or she possesses unique knowledge—gained through education, training, and experience. Indeed, § 490.065.1 recognizes that experts have "specialized knowledge" which will assist factfinders in understanding the evidence.

The differing opinions of Eck and McClanahan about what Florence Construction should have known about the safety of traffic controls in the construction zone present a genuine issue of material fact. *See Orscheln*, 793 S.W.2d at 533. We, therefore, reverse the circuit court's summary judgment and remand for further proceedings.

SMART, P.J., and ELLIS, J., concur.