David **HARLAN**, Respondent,

v.

**APAC–MISSOURI, INC.,**
**et al., Appellants.**

No. WD 73637.

Missouri Court of Appeals,
Western District.

Dec. 13, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 2012.

Application for Transfer Denied
April 3, 2012.

Anthony L. Gosserand, for Appellant APAC–Missouri, Inc.

William L. Carr, for Respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, JOSEPH M. ELLIS, Judge and CYNTHIA SUTER, Special Judge.

JOSEPH M. ELLIS, Judge.

APAC–Missouri Inc. ("APAC") appeals from a judgment entered in the Circuit Court of Lafayette County in favor of David Harlan in a negligence action filed by Harlan related to a motorcycle accident. For the following reasons, the judgment is affirmed.

On July 26, 2006, Harlan was driving a motorcycle eastbound on I–70 highway in Lafayette County through a construction zone in which the Missouri Highway and Transportation Commission ("MHTC") had contracted with APAC to resurface the highway. As he drove through the inactive construction zone at the posted speed of 70 miles per hour, Harlan moved into the passing lane to pass a tractor-trailer traveling at 55 miles per hour. After passing the truck, Harlan lost control of his motorcycle attempting to return to the driving lane due to uneven pavement between the two lanes. Harlan sustained significant physical injuries in the accident.

On June 11, 2008, Harlan filed a Petition for Damages in the Circuit Court of Lafayette County against MHTC and APAC asserting that they were negligent in assorted ways, including failing to warn drivers that the lanes were uneven. At trial, the failure to warn claim was the only one submitted against APAC. Following trial, the jury returned a verdict finding MHTC 70% at fault for the accident, APAC 25% at fault, and Harlan 5% at fault. The jury assessed Harlan's total amount of damages to be $1,000,000.00. Consistent with the jury's verdict, the trial court entered judgment against MHTC for $700,000.00 and against APAC for $250,000.00. APAC brings three points on appeal from that judgment.

In its first point, APAC contends that the trial court erred in denying APAC's motions for directed verdict and for judgment notwithstanding the verdict ("JNOV") because the evidence established that APAC had followed the traffic control pattern established by MHTC and that APAC did not know that the uneven pavement was a dangerous condition and likely to cause injury to a third party.

 "The standard of review for failures to sustain motions for directed verdict and for JNOV is essentially the same." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). "This Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Id.* "Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences." *Id.* We "will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. banc 2006).

"Under Missouri law, the state highways are under the jurisdiction and control of MHTC." *Martin v. Missouri Highway & Transp. Dep't*, 981 S.W.2d 577, 583 (Mo. App. W.D.1998). "Section 227.030.1 provides that all construction and maintenance of Missouri's highways, and all work incidental to the highway system, is under the general supervision and control of the MHTC." *Id.* In this case, MHTC did all of the design work for the project and contracted with APAC to execute its plan.

APAC cites two cases involving road contractors under contract with MHTC wherein this Court applied the master/servant principle that "where a servant obeys the orders of his master without negligence, the servant will not be liable for injury to third persons unless he knew, or had reason to believe, that such actions

were dangerous and likely to cause injury to a third person." *Beyerbach v. Girardeau Contractors, Inc.*, 868 S.W.2d 163, 167 (Mo.App.W.D.1994); *see also Casey v. Florence Const. Co.*, 939 S.W.2d 36, 38 (Mo.App.W.D.1997). In *Beyerbach*, this Court upheld the trial court's granting of summary judgment where the plaintiff failed to identify any evidence that the contractors' actions "were in contravention of MHTC's directives or that the contractors had any reason to believe their actions were dangerous or likely to cause injury." *Beyerbach*, 868 S.W.2d at 168. In *Casey*, we noted the master/servant principle but held that the evidence "established a genuine issue of fact as to whether [the contractor] knew, or had reason to believe, that its traffic controls were dangerous or likely to cause injury to third parties." *Casey*, 939 S.W.2d at 39.

■ Neither *Beyerbach* nor *Casey* mentioned existing case law holding that the fact that a contractor performed the construction work in compliance with MHTC plans and specifications does not serve to insulate the contractor from liability in negligence. *Dick v. Scott Const. Co.*, 539 S.W.2d 688, 692 (Mo.App. E.D.1976). "[H]ighway contractors have a continuing and non-delegable duty to exercise reasonable care for the safety of the public using the highway." *Swindell v. J.A. Tobin Const. Co.*, 629 S.W.2d 536, 541 (Mo.App. W.D.1981). "The primary duty to exercise reasonable care for the safety of the general public using a road or highway during improvements or repair rests on the road contractor, and the road contractor in this respect must act reasonably and with due regard to the rights of persons lawfully using the way and is liable for injuries resulting from negligence in the performance of his work." *Best v. Fred Weber Const. Co.*, 525 S.W.2d 102, 108 (Mo.App. E.D.1975). "The liability, aforesaid, is im-

posed upon the road contractor not by virtue of his contract with a public authority, or upon failure to perform the work in accord with a contract, but upon the tortious breach of duty imposed upon the contractor by common law." *Id.* "And the contractor may be liable even though he acted without negligence in creating the dangerous situation, and this liability exists regardless of the requirements of his contract with the highway authorities and irrespective of any liability on the part of the governmental body employing the contractor." *Joshmer v. Fred Weber Contractors, Inc.*, 294 S.W.2d 576, 583 (Mo.App. E.D.1956); *see also Best*, 525 S.W.2d at 108.

■ APAC argues that *Beyerbach* and *Casey* implicitly overruled the existing case law related to highway contractors. Harlan contends that the prior case law related to contractors was not overruled. Regardless, we need not address the conflict, if any, between these two lines of case law because the evidence is sufficient to support the verdict under both lines of cases.

The record contains sufficient evidence from which the jury could reasonably have found that APAC knew, or had reason to know, that the 1¾" uneven lane height difference it was creating was dangerous and that signs warning of that condition should have been used on the project.

Jason Stasny, who was APAC's general superintendent at the time of the accident, testified that uneven lane situations can be dangerous. Stasny testified that APAC knew there were going to be uneven lanes on the project and that this condition could exist for extended periods of time. Stasny testified that he was familiar with federal standards that suggest that contractors should try to alleviate uneven lane conditions within one operating day or as soon as possible. He stated that one of the

reasons for that is that it can be dangerous to motorists to have uneven lane situations. Stasny testified that one way to try to alleviate accidents was to warn people of conditions that might not be evident to them. Stasny testified that the company had the right and the ability to request that MHTC authorize additional safety signs on a project. Moreover, Stasny acknowledged that MHTC's 1999 standard specifications, which were specifically incorporated into the contract between APAC and MHTC, provided that "[t]he contractor may, at no cost to the Commission, add to the traffic control plan any standard signs or traffic control devices that contractor considers necessary to adequately protect the public and the work." Furthermore, Stasny acknowledged that the *Manual on Uniform Traffic Control Devices* provides that uneven lane signs should be used during operations anytime that a difference in elevation between adjacent lanes was created.

Phillip Raines, former inspector for MHTC and an estimator for APAC at the time of the accident, testified that the uneven lanes created during the cold milling process can create a danger for motorists. Raines testified that APAC could have suggested to MHTC that additional signs needed to be added to a project and that he had made such requests in the past.

Gary Chambers, an engineering expert retained by Harlan, testified that studies going back to 1984 had indicated that uneven lanes could be unsafe depending upon the height difference and the speed of the vehicles and that any edge height difference could be dangerous to motorcyclists. He stated that the studies established that, at speeds of forty-five miles per hour or higher, even height differentials of one inch or less could be dangerous to motorcyclists. Specific to this case, Chambers testified that the lane differential of 1¾" at

the speeds allowed on this highway was a dangerous condition. He further testified that this condition was present day and night, rain or shine for ten days. Chambers testified, without objection, that a contractor would have the information and knowledge to know that the uneven lane condition was dangerous. Chambers testified that APAC should have called MHTC's attention to the dangerous condition of the uneven lanes and requested uneven lane signs. He further stated that this failure to act fell below the standard of care for contractors.

Viewed in the light most favorable to the plaintiff, the foregoing evidence was certainly sufficient to support a finding by the jury that APAC knew or should have known that the uneven pavement condition created on its project was dangerous. Point denied.

■ In its second point, APAC contends that the trial court erred in denying its motion for directed verdict and for JNOV because the evidence was insufficient to establish proximate cause between any negligence on APAC's part and Harlan's accident. APAC argues that the evidence does not establish that it had any authority to unilaterally put up warning signs or that MHTC would have authorized the use of uneven lane signs if APAC had requested them.

The contract between APAC and MDOT, admitted into evidence at trial, stated that "the work shall be done in accordance with the 'Missouri Highways and Transportation Commission Standard Specifications for Highway Construction 1999,' and the Standard Specifications are part and parcel of this contract, and are incorporated in this contract as fully and effectively as if set forth in detail herein." The record further reflects that the 1999 Standard specifications provided that "[t]he contractor may, at no cost to the

Commission, add to the traffic control plan any standard signs or traffic control devices that contractor considers necessary to adequately protect the public and the work." While APAC presented testimony indicating that MHTC had the exclusive power to determine whether a sign could be placed on the project, the jury was not required to believe that testimony. Moreover, the testimony offered at trial reflects that MHTC would have taken seriously any request for additional safety signs made by APAC or any other contractor. Point denied.

In its final point, APAC contends that the trial court erred in denying its motion to amend the judgment to reduce the amount awarded against it by an additional five percent based upon the jury's finding that Harlan was five percent at fault for the accident. The gist of APAC's argument is that the verdict against it should be reduced to $237,500, that being 95% of the total of $250,000 awarded against it. In making this argument, APAC appears to misunderstand the basic arithmetic involved in the trial court's award.

The jury returned a verdict finding that Harlan had suffered $1,000,000.00 in damages as a result of the accident. The jury found MHTC 70% at fault for the accident, APAC 25% at fault, and Harlan 5% at fault. Consistent with the jury's verdict, the trial court entered judgment against MHTC for $700,000.00 (70% of $1,000,000.00) and against APAC for $250,000.00 (25% of $1,000,000.00). Because he was deemed to be 5% at fault, Harlan was not allowed recovery for 5% of his $1,000,000.00 in damages or $50,000.00. Accordingly, APAC's claim that the judgment did not properly account for the 5% fault found against Harlan is devoid of merit.

The trial court did not err in denying APAC's request that the award against it be reduced by an additional 5%. Point denied.

The judgment is affirmed.

All concur.