

# Missouri Court of Appeals
## Southern District

### In Division

BRANTLEY ATCHLEY and
BECKY TITTLE, as survivors of
Deceased Kayla Atchley,

      Plaintiff-Appellants,

v.

MISSOURI HIGHWAYS AND
TRANSPORTATION COMMISSION

and

APEX PAVING COMPANY

      Respondents-Respondents.

No. SD38169

**Filed: August 12, 2024**

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

The Honorable Robert N. Mayer, Judge

## AFFIRMED

Appellants Brantley Atchley and Becky Jo Tittle ("Appellants") appeal a grant of summary judgment in favor of Defendant Apex Paving Company ("Apex") on a claim of negligence related to the wrongful death of their daughter. Finding no genuine issues of material fact and that Apex did not have a common law duty under these facts, we affirm.

1

**Factual Background and Procedural History**

This case arises out of a fatal car accident that occurred on a portion of Missouri Highway 153 ("Highway 153") on April 26, 2020. In their Second Amended Petition, Appellants assert that an alleged defect, a drop off on the shoulder of Highway 153, created a dangerous condition that caused the crash and the death of Appellants' daughter ("Decedent").

Apex is a highway construction contractor. In the summary judgment record, the parties agree that Apex did not design or construct any portion of Highway 153, either on or before April 26, 2020.

On March 4, 2020, Apex entered into a contract with the Missouri Highways and Transportation Commission ("MHTC") for a combination of three jobs: to resurface 46.804 miles of Highway 153; to resurface 2.697 miles and add shoulders to Route E in Dunklin County; and to resurface 5.471 miles of Route C in Mississippi County. The contract for these projects incorporates the Missouri Standard Specifications for Highway Construction ("MSSHC") as terms of the contract, and references the Missouri Engineering Practices Guide ("EPG").

The MHTC sent the notice to proceed on all three projects on April 6, 2020. The preconstruction meeting was held on April 8, 2020. The progress schedule was finalized at the preconstruction meeting. Apex did not, either on or before April 26, 2020, actually mobilize to any portion of Highway 153.

Prior to bidding on the project, Apex did a site visit of the entire 46-mile roadway to be repaired. Apex told MHTC in its bid that Apex was familiar with the local conditions affecting the work. Work on the shoulder drop-off edge was to be completed at some point during the

project. At the time of the accident, no one had put up any warning signs on Highway 153 where the accident occurred.

In Count II of the Second Amended Petition, Appellants allege that Apex owed Decedent a common law duty to keep MO Highway 153 in a safe condition. Appellants further allege that Apex knew, or should have known, of the deteriorated and unsafe condition of MO Highway 153 where the incident occurred. Appellants assert that Apex "breached their duty of ordinary care" in that Apex failed to properly "design, construct, maintain, or warn of MO Highway 153 in Stoddard County, Missouri where the incident at issue occurred thereby causing it to be in a deteriorated and unsafe condition." Further, Appellants assert that the shoulder of Highway 153 where the incident occurred "was improperly designed, maintained, constructed, or warned of, and contributed to Decedent's loss of control."

Apex moved for summary judgment. The trial court granted Apex's Motion, holding that: 1) Apex's common law duty to warn was limited to preexisting dangerous conditions in the "locus of construction" and to dangerous conditions that Apex created; 2) that Apex did not design, construct, maintain or fail to warn of the alleged pre-existing defect such that it created a dangerous condition to the Decedent; and 3) that Apex's contract with the MHTC did not contain an explicit duty to mobilize to the construction site or warn of any defects upon the issuance of the notice to proceed or on any fixed date thereafter. At the request of the parties, and pursuant to Rule 74.01(b), the trial court certified that this judgment disposed of all claims against Apex and that there was no just reason for delay. This appeal followed.

## Standard of Review

An appellate court reviews a grant of summary judgment de novo. ***Templeton v. Orth***, 685 S.W.3d 371, 374 (Mo. banc 2024) (citing ***Green v. Fotoohighiam***, 606 S.W.3d 113, 115

(Mo. banc 2020)). Summary judgment is proper only if the moving party establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id*. A genuine issue of fact exists when the record contains competent evidence that two plausible, but contradictory, accounts of essential facts exist. ***ITT Com. Fin. Corp v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 382 (Mo. banc 1993). In reviewing summary judgment on appeal, the record is viewed in the light most favorable to the party against whom summary judgment was entered. ***Templeton***, 685 S.W.3d at 374. That party is entitled to all reasonable inferences from the record. ***Id.***

### Analysis

As an initial matter, the Court must sort out exactly what issues Appellants are challenging on appeal. Appellants' Second Amended Petition asserts one count of negligence against Apex (Count II). In the trial court, Apex moved for summary judgment on three distinct allegations made by Appellants in their claim for negligence: 1) that Apex owed a broad common law duty to the Decedent; 2) that Apex "created, designed, constructed or maintained the alleged dangerous condition;" and 3) that Apex had no clear duty in its contract with MHTC to mobilize to, or post warnings on, Highway 153 by a certain date. The trial court ruled for Apex on each of those specific issues, and granted summary judgment on the pending claim.

Appellants assert two points on appeal. In Point I, Appellants allege that the trial court erred in "finding that Apex owed no duty" to Decedent because "Apex had a broad common law duty to keep the roadway safe…." Appellants' Point I is only directed at the trial court's ruling with respect to Apex's common law duty. Within that discussion, Appellants cite to the fact that Apex "had control" over the area at issue, but cite that allegation only in relation to the question of whether a common law duty exists, and not whether Appellants are specifically challenging

4

the Court's ruling that Apex had no clear contractual duty with MHTC to mobilize to, or post warnings on, Highway 153 by a certain date. To the extent Appellants would assert that is the case, Point I would be multifarious.[1] Appellants take great care in their Reply brief to point out they are not arguing issues of contractual duty, only the extent of Apex's common law duty. As such, this Court will treat Point I as being solely directed at the trial court's ruling that Apex had no common law duty to the Decedent in this case.

In Point II, Appellants allege that the trial court erred in granting summary judgment in that doing so "limits Appellants' theory of the case" and Appellants have the right to choose their theory of the case. Point II is not directed at any of the specific rulings made by the trial court.

Neither of Appellants' Points address the trial court's specific ruling that Apex did not create, design, construct or maintain the alleged dangerous condition, or that Apex did not have a contractual duty with MHTC to mobilize to, or post warnings on, Highway 153 by a certain date. The Court, therefore, does not review those rulings on appeal.

*Scope of Apex's Common Law Duty*

In a negligence claim, the duty element is unique in that the existence of a duty is a question of law to be decided by the court. ***Burrell ex rel. Schatz v. O'Reilly Auto., Inc.***, 175 S.W.3d 642, 656 (Mo. App. S.D. 2005) (citing ***Stitt v. Raytown Sports Ass'n, Inc.***, 961 S.W.2d 927, 930 (Mo. App. W.D. 1998)). Whether a duty exists "depends upon a calculus of policy

---

[1] A point is multifarious if it contains more than one distinct claim of error. ***Franco v. Lester E. Cox Med. Ctrs.***, 677 S.W.3d 581, 583 (Mo. App. S.D. 2023). Here, Appellants' Point I states generally that the trial court erred in finding Apex owed no duty, and then proceeds to list multiple separate factual and legal theories as to why a duty should have been found. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." ***Id.*** (quoting ***Roesch v. Birch-Edmundson***, 667 S.W.3d 679, 682 (Mo. App. E.D. 2023)). In our discretion, we may review all, some, or none of a multifarious point relied on. ***Crisp v. Missouri Sch. for Deaf, Dep't of Elementary & Secondary Educ.***, 681 S.W.3d 650, 658-59 (Mo. App. W.D. 2023). Though we may choose to not address a multifarious point, we prefer to decide cases on their merits. We may exercise our discretion to address the merits of each claim in a multifarious point relied on when we can readily discern and separate the independent claims of error asserted in the point. ***Id.*** at 659. We will therefore exercise our discretion to address the merits of Appellants' Point I and will separate Appellants' contentions as best as we can discern them. ***Id.***

considerations." *Id*. While foreseeability is the paramount factor in determining existence of a duty, it is not enough, in and of itself, to establish a duty. *Id*. "[T]here must also be some right or obligation to control the activity which presents the danger of injury." *Id.*; *see also Burns v. Black and Veatch Architects, Inc.*, 854 S.W.2d 450, 457 (Mo. App. W.D. 1993) (holding foreseeability and realization of the possibility that a dangerous situation may have been created are not enough, standing alone, to establish a duty; there must also be some right or obligation to control the activity that presents a danger of injury). The sources for determining the existence of a duty of care are multiple, i.e., it can be imposed by controlling statutes, assumed via contract, or imposed by common law under the circumstances of a given case. *Burrell*, 175 S.W.3d at 656.

In this case, Appellants assert that the common law is the source of Apex's alleged duty to Decedent. Appellants' primarily cite *Harlan v. APAC-Missouri Inc.*, 360 S.W.3d 826 (Mo. App. W.D. 2011) in support of this assertion. In *Harlan*, the unsafe condition at issue, uneven pavement within an inactive work zone, was constructed by the highway contractor. *Id.* at 828. The contractor argued that because it performed its construction work in accordance with the guidelines provided by the highway department, the contractor should not be liable. *Id.* at 829. In rejecting the contractor's argument, the court stated that "[h]ighway contractors have a continuing and non-delegable duty to exercise reasonable care for the safety of the public using the highway." *Id.* The Court went on to state that "[t]he primary duty to exercise reasonable care for the safety of the general public using a road or highway during improvements or repair rests on the road contractor, and the road contractor in this respect must act reasonably and with due regard to the rights of persons lawfully using the way and is liable for injuries resulting from negligence *in the performance of his work*." *Id.* (emphasis added).

6

The present case is clearly distinguishable from *Harlan*. Apex had not performed any construction work in the area of the accident, nor were they responsible for designing, constructing or maintaining the allegedly unsafe shoulder of Highway 153. Unlike the contractor in *Harlan*, Apex did not perform any work in the area of the accident, nor did they create the allegedly dangerous situation that was present.

Appellants' reliance on *Cincinnati Ins. Co. v. Missouri Highways and Transp. Comm'n*, 2014 WL 4594207 (W.D. Mo. Sept. 15, 2014), is similarly misplaced. In *Cincinnati*, a highway contractor was performing work within feet of an area where an incident occurred. *Id.* at *18. As part of its work, the highway contractor had closed a lane, which caused traffic to be diverted onto the adjacent shoulder where the alleged incident occurred. *Id.* In interpreting the insurance contract at issue, the court held that, based on the facts of the case, it could not say "that because of timing under the contract, [the contractor] owed no duty to the public to fix or warn about a dangerous condition in an area *it actively worked* or at a minimum notify MHTC of the problem." *Id.* (emphasis added).

*Cincinnati* is factually distinguishable. At the time of the alleged incident, Apex was not "actively working" on any portion of Highway 153, much less working in the area of the alleged defect. Further, Apex had not closed any lanes or taken any action that would have diverted Decedent's vehicle onto the shoulder of Highway 153. The decision in *Cincinnati* does not impose liability on a highway contractor for an alleged defect that it had no hand in creating, nor does the decision impose liability on a highway contractor that took no action to divert traffic into the area of an alleged defect.

In their briefs, Appellants emphasize that their claim against Apex arises under the common law. Appellants, however, repeatedly cite to provisions of the contract between Apex

7

and MHTC to support their argument that a common law duty existed. For a duty to exist, there must be some right or obligation to control the activity which presents the danger of injury. *Burrell*, 175 S.W.3d at 656. None of the cases cited by Appellants hold that control imposed via a *contract* is sufficient to create the basis for imposition of a *common law* duty against a highway contractor. The decision in *Harlan*, in fact, makes clear that the duty imposed upon a road contractor under the common law is independent of contractual requirements. *Harlan*, 360 S.W.3d at 829 (citing *Best v. Fred Weber Constr. Co.*, 525 S.W.2d 102, 108 (Mo. App. E.D. 1975)) ("The liability, aforesaid, is imposed upon the road contractor not by virtue of his contract with a public authority, or upon failure to perform the work in accord with a contract, but upon the tortious breach of duty imposed upon the contractor by common law."). Appellants have cited no common law authority that would establish that Apex had control of the relevant area of Highway 153 at the time the incident occurred.

"The primary duty to exercise reasonable care for the safety of the general public using a road or highway during improvements or repair rests on the road contractor, and the road contractor in this respect must act reasonably and with due regard to the rights of persons lawfully using the way and is liable for injuries resulting from negligence *in the performance of his work*." *Best*, 525 S.W.2d at 108 (citing *Joshmer v. Fred Weber Contractors, Inc.*, 294 S.W.2d 576, 582(2) (Mo. App. 1956)) (emphasis added). A road contractor contracting with a public body is not entitled to avail itself of the immunity of such public body for injuries resulting from either willful tort or *negligence in the performance of* the contractor's public work. *Id.*, (citing *Phegley v. Porter-DeWitt Constr. Co.*, 501 S.W.2d 859, 863 (Mo. App. S.D. 1973)) (emphasis added).

This Court has not found, nor been provided, a Missouri appellate decision that has done what Appellants seek to do here: impose an obligation on a highway contractor that has not yet performed any work in the area where an alleged incident occurred. In this case, it is undisputed that Apex: 1) did not design or construct the portion of Highway 153 where the defect was allegedly located; 2) that Apex had not mobilized to that portion of Highway 153 and would not for some time; and 3) that Apex had not taken any action that made the condition complained of more dangerous than it was on the day Apex signed the contract.

While Appellants are correct that no existing Missouri case law has been cited that limits a highway contractor's duty to the "locus of construction," there are also no citations to any existing Missouri case law that imposes a common law duty on a highway contractor that has not yet begun working in the area of an alleged defect. We decline to impose such duty here. Summary judgment was properly granted to Apex under these facts. Point I is denied.

*Limitation on Appellants' "Theory of the Case"*

In Point II, Appellants appear to argue that the trial court erred in entering summary judgment for Apex in that such judgment interferes with Appellants' right to choose their "theory of the case." While Appellants cite to cases which generally discuss a party's ability to choose their theory of the case, they cite no cases to support the argument that a summary judgment motion cannot be granted if it somehow limits their "theory of the case."

Any time a summary judgment is granted, it necessarily restricts the claims that a party may pursue. Rule 74.04(b) permits a defending party, like Apex, to move for summary judgment as to "all or any part of the pending issues." Apex requested summary judgment on three specific allegations in Appellants' claim for negligence: 1) that Apex did not yet have a common law duty to the public with respect to this area of Highway 153 under the

9

circumstances; 2) that Apex did not properly design, construct, maintain or warn of the alleged pre-existing defect such that it created a dangerous condition to the Decedent; and 3) that Apex had no clear duty in its contract with MHTC to mobilize or warn upon the issuance of the Notice to Proceed or any fixed date. The trial court ruled there were no genuine issues of material fact, and granted judgment to Apex as a matter of law.

While Appellants cite the desire to potentially submit their negligence claim against Apex under a theory of "general negligence" or "premises liability," neither of these theories are specifically pled against Apex in the Second Amended Petition. Further, none of the cases cited by Appellants demonstrate that a general theory of negligence is cognizable against a highway contractor in this context. *See Woodall v. Christian Hosp. NE-NW*, 473 S.W.3d 649 (Mo. App. E.D. 2015) (action for premises liability and general negligence against premises owner by a contractor's employee who was injured on the property); *Coleman v. Meritt*, 292 S.W.3d 339, 343 (Mo. App. S.D. 2009) (action for negligence by patient against doctor and radiologist); *Daoukas v. City of St. Louis*, 228 S.W.3d 30, 35 (Mo. App. E.D. 2007) (action for negligence by employee of electrical contractor against contractor and the City of St. Louis arising out of a work accident); *Nagaradde v. Pandurangi*, 216 S.W.3d 241, 245 (Mo. App. W.D. 2007) (action for negligence by a guest against a homeowner).

Once the moving party, in this case Apex, makes a prima facie showing they are entitled to judgment as a matter of law, the non-moving party has the burden to set forth specific facts, supported by affidavits or other evidence, that show there is a genuine issue for trial. *Larabee v. Eichler*, 271 S.W.3d 542, 546 (Mo. banc 2008) (citing *Fetick v. Am. Cyanamid Co.*, 38 S.W.3d 415, 418 (Mo. banc 2001)). Appellants' desire to potentially pursue other legal theories is not a

"specific fact" that would otherwise prohibit the granting of a properly supported summary judgment motion.  Point II is denied.

## Conclusion

The trial court's grant of summary judgment to Apex is affirmed.


MATTHEW P. HAMNER, J.  – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS